## THE MISSOURI PACIFIC RAILWAY COMPANY V. McCARTY et al., Appellants.

1. **Specific Performance : EVIDENCE.** The evidence relied upon to obtain a decree for specific performance must be of so clear and forcible a nature as to leave no room for reasonable doubt in the mind of the chancellor hearing the cause. The evidence in this case held not to meet this requirement.

2. **Limitation : EJECTMENT.** Where, after suggestion of the death of defendant in an ejectment suit, the original petition therein is amended by striking out the defendant's name and inserting in lieu thereof the names of his wife and children who are in possession of the property, and summons is issued on the petition as amended and duly served, such irregularities do not aid the running of the statute of limitations, service having been made before the statute could have run.

3. **Practice : GUARDIAN AD LITEM.** Where minors are duly served with process and before any steps are taken affecting their rights, a guardian ad litem is appointed, a delay in his appointment does them no hurt.

*Appeal from Jackson Circuit Court.*—HON. J. II. SLOVER, Judge.

AFFIRMED.

AT THE trial, Ellen McCarty, one of the defendants, testified : That she was the widow of John McCarty, deceased, and had been living on the land now in controversy, for the last twelve years; that she knew of the dealings of her husband with the Missouri Pacific Railroad Company; that he was employed in 1870–71 and 1872, as a car-repairer by the Missouri Pacific Company, as she always understood, and that while in the employ

of that company, he sustained injuries by reason of his employment, and that he brought suit against the company for these injuries; that he got from the company the house she was then living in and three lots, and a piece of land and two thousand dollars in cash; Mrs. McCarty then further testified as follows:

"Q. Where have you been living for the last ten or twelve years? A. Down on our home place that my husband got from the company.

"Q. When did you go there? A. I think it was in 1872.

"Q. Did you know Mr. Dickerson? A. Yes, sir.

"Q. Who was he working for at that time? A. For the Missouri Pacific Company.

"Q. Do you know what office he was holding? A. He was division superintendent.

"Q. You say he pointed out this spot to your husband; now, state anything else he said about it at that or any other time? A. Well, another time myself and my husband were walking down that way around the state line, and Mr. Dickerson was in his buggy and he says to my husband: 'Now, Mack, you have got a good home and employment; you musn't drink any.'

"Q. When was that statement made? A. It was quite a little while after we went to live on the place.

"Q. Was anything else said or done by officers of the road with reference to the settlement? A. I don't know."

On cross-examination:

"Q. Well, when did you first go on the premises —was it after the settlement? . A. After the settlement.

"Q. You were not there when the settlement was made? A. No; I went with the intention to be there, and I had to return.

"Q. You don't know anything about it except

what your husband told you? A. Well, I am confident it was so, anyhow.

"Q. I know, of course, you are confident; but what you know is what he told you? A. Yes, sir; and what I saw myself, too.

"Q. Now, state what you saw yourself? A. Well, I saw him get the land. I saw Mr. Talmage and Mr. Dickerson, and I think, Mr. Dalby, at that time—I am not sure but I think it was. I don't know, for I have not seen him many times since.

"Q. Were you present when these gentlemen came upon the land? A. Yes, sir; my husband came to the house a little before, in the morning, and he says: 'Ellen, they are coming to me down there to point out the piece of land for us.' He says, 'You come down after awhile.' It was only a short distance, a block or so, from where we lived, so I took one child with me and went down, though I didn't go right close to the gentlemen.

"Q. You didn't hear what was said? A. No.

"Q. You saw no writing pass there at all? A. No, sir; I didn't see any, but I saw them upon the land.

"Q. But you think there was, though, probably? A. No; I didn't say that. -

"Q. You didn't hear what was said? A. No more than they showed my husband the piece of land, and where the house would be built.

"Q. They were to have a thousand dollars for the house? A. Yes, sir.

"Q. What was the other thousand dollars for? A. For employment for life.

"Q. Your husband gave the Pacific Railroad Company a thousand dollars in consideration of employment for life? A. Yes, sir.

"Q. Did you hear that? A. No; my husband told me.

"Q. He told you he was getting two thousand dollars cash, employment for life for one thousand, and the house for another thousand ? A. Yes, sir.

"Q. The house cost about a thousand dollars, didn't it ? A. No ; I don't think it did ; it was a mere shell.

"Q. But the way they figured up the four thousand dollars was two thousand cash, one thousand in consideration of employment for life, and this house ? A. Yes, sir.

"Q. That is what your husband told you ? A. Yes, sir."

*G. F. Ballingal* and *Botsford & Williams* for appellants.

(1) The answers set up a complete equitable defense, upon which, if affirmative relief had been asked, appellants would have been entitled to a decree for title against the Pacific Railroad, and its assignees with notice of appellants' equities. *Anderson v. Shockley,* 82 Mo. 250 ; *Pike v. Martindale,* 91 Mo. 268, and cas. cit. (2) The cause of action stated in the original petition against John McCarty, sole defendant therein, did not survive against his widow and heirs, but abated at his death, and appellant Ellen McCarty's motion to dismiss the action should have been sustained. R. S. sec. 3663. (3) Even if the cause of action stated in the original petition survived against the widow and children of the deceased defendant, as his successors in interest, no order of the court was ever made, after the suggestion of his death, that the action be revived against them, stating their names and capacities in the order as required by the statute. Nor was any summons ever issued against them to show cause against such revivor. R. S. secs. 3664, 3665 ; *Sergeant v. Rowsey,* 89 Mo. 617 ; *Ferris v. Hunt,* 18 Mo. 480 ; *Murphy v. Redmond,* 46 Mo. 318 ; *Gamble v. Daugherty,* 71 Mo. 599.

*Robert Adams* for respondent.

(1) The cause of action did not abate at the death of the original defendant in possession. The gist of the action was to recover the possession of the lots in controversy ; upon the death of the original defendant the possession descended to the widow and his heirs, and they were properly made parties to the suit' by original process. *Chambers, Adm'r, v. Wright's Heirs,* 40 Mo. 485 ; *Ambrose v. Levy,* 23 Mo. 89 ; *Brewington v. Stevens, Adm'r,* 31 Mo. 39 ; *Fine v. Gray,* 19 Mo. 33. (2) The court committed no error in directing a verdict for the plaintiff. The defense was two-fold : First, that the Atlantic & Pacific Railroad had agreed to convey the premises in controversy in part satisfaction of a judgment against the Pacific Railroad ; second, adverse possession for ten years. There was absolutely no evidence that any person representing the Pacific Railroad, the owner of the fee, or any other railroad with authority to do so, made such a contract as contended for by defendant, or any legal evidence that such contract was made by any person. Neither was there any evidence that John McCarty held adversely for the statutory period or for any period of time. Tyler on Ejectment, 873 ; *Jackson v. Berner,* 48 Ill. 203 ; *Brandt v. Ogden,* 1 Johns. 156–158 ; *Jackson v. Sharp,* 9 Johns. 163–166 ; *Gay v. Moffett,* 2 Bibb ( Ky.) 507 ; *Kirk v. Smith,* 9 Wheat. 241–288 ; *Musie v. Barney,* 49 Mo. 468 ; *Babcock v. Utter,* 32 How. Pr. 439.

SHERWOOD, J. —Ejectment for certain lots in Kansas City. The petition was filed September 23, 1881 ; process issued therein against said defendant, John McCarty, returnable to the October term, · 1881, of said court, which was duly served. At said October term, 1881, said defendant, John McCarty, appeared to said action, and filed his answer therein, denying

each and every allegation in said petition. Afterwards, at the April term, 1882, of said court, and on the twenty-eighth day of April, 1882, the death of said defendant, John McCarty, was suggested of record. Thereafter, at the same term, and on June 30, 1882, respondent filed, in said court, an amended petition, making appellants, Ellen McCarty, Cora Francis, and Ellen May McCarty, sole defendants. The original petition against John McCarty was also amended by striking out the name of said John McCarty, and inserting the name of appellants as sole defendants, and it was ordered that summons be issued against them, returnable to the next term of said court.

On the original petition, as thus amended, summons issued, and was duly served on them September 22, 1882, returnable to the October term, 1882, of said court, against appellants. Nothing was done in said cause, and no record entry therein was made at said October term, 1882. At the April term, 1883, of said court, and on the seventh day of April, 1883, appellant Ellen McCarty filed her motion to dismiss this action, on the ground that said action did not survive as against her, and also that said action had abated, by reason of the discontinuance at the October term, 1882.

Afterwards, at the same term, and on the ninth of July, 1883, on application of respondent, it was ordered that a writ of summons be awarded against appellants, returnable to the next term of said court. This writ of summons, in the usual and ordinary form, attached to respondent's amended petition of June 30, 1882, was issued July 13, 1883, and personally served July 16, 1883, on appellant Ellen McCarty, she being the first person served, and as shown by the sheriff's return, "by delivery of a copy of the writ to each of the within named defendants, Cora F. McCarty and Mary E. McCarty." It does not appear from said return that

appellant "Ellen Mary McCarty" was served with said writ, other than by the name of "Mary E. McCarty," appearing in said return.

At the October term, 1883, of said court, and on the eighteenth day of October, 1883, the motion of appellant Ellen McCarty to dismiss was overruled, and on the nineteenth day of October, 1883, leave was granted her to answer on or before November 1, 1883, on which day she filed a separate answer. This answer appears to have been lost; and on April 22, 1884, and at the April term, 1884, of said court, appellant filed a substituted answer to said petition. At said April term, 1884, it was suggested that respondents Cora F. and Ellen May were infants, and on application of respondent the court appointed their mother, Ellen McCarty, guardian *ad litem* for said infants, who, on said April 22, 1884, filed a separate plea and separate answer to said petition.

The answer of appellant Ellen McCarty contains a general denial and the following allegations, to-wit: That she is the widow of John McCarty, deceased; that said John McCarty obtained judgment against the Atlantic & Pacific Railroad Company, in the Jackson circuit court, for ten thousand dollars, for damages for personal injuries; that, thereafter, in February, 1872, said Atlantic & Pacific Railroad Company and said John McCarty made a settlement of said judgment by which said company agreed to, and did pay said McCarty two thousand dollars; agreed to give him employment for life as its watchman, and also to deed him the premises now in controversy, and build a dwelling-house thereon of the value of at least one thousand dollars; that, in consideration and performance of said agreement, said McCarty released said judgment; said railroad company built said dwelling-house, and on the —— day of ——, 1872, put said McCarty in possession of the same, where he lived until the date of his death; that, after he was so put in

possession, he, with his family, among whom was the defendant, now his widow, made lasting and valuable improvements thereon, of the value of two thousand dollars ; that said railroad company had full knowledge of the possession, claim and improvements of said John McCarty, made no objection thereto, but permitted the same, and that, by reason thereof, said company was estopped from making or claiming title or interest in said premises ; that plaintiff herein is the successor of said Atlantic & Pacific Railroad Company, and as such has assumed all and singular the rights, and incurred the liabilities of said company ; that said premises have been held by this defendant adversely ever since the date aforesaid for more than ten years prior to the filing of the suit herein against her.

The separate answer of the infant appellants, Cora F. and Ellen May McCarty, by their guardian *ad litem*, alleges that plaintiff ought not to have or maintain its action against them for the reason that said action was brought against John McCarty, father of said infants, and that during the pendency of said action said McCarty, who was the sole and only defendant, died, and his death was suggested of record of said court at the —— term of said court, and that more than three terms of said court were held, after such suggestion of death of said John McCarty, before *scire facias* was issued or served upon the defendants ; that said infants were never legally or properly made parties to this action ; that said cause of action as originally instituted did not survive against said infants, and that said action abated by the death of said sole defendant John McCarty. For further answer, they make a general denial, and also allege that said infants, with their said father, entered into the lawful possession of said premises in 1872, and have ever since held the same adversely as their own property for more than ten years before any *scire facias* or other service was had upon them as parties herein.

The reply to each of these answers is a denial.

On the trial, it was admitted that both parties claimed under the Pacific Railroad Company, as the common source of title.

I.   As has been seen the defendant Ellen McCarty relied on such a contract made with her husband as would have entitled him to have obtained a decree for specific performance against the defendant company, and also relied on adverse possession of the lots for ten years.  Her testimony would not authorize a decree for specific performance, for the reason that it was largely made up of what her husband had told her, and as to what she knew of her own knowledge it afforded no basis whatever for equitable relief of the character mentioned.  In short, her testimony was not of so clear and forcible a nature as to leave no room for reasonable doubt in the mind of the chancellor hearing the cause.  *Berry v. Hartzell*, 91 Mo. 132, and cas. cit.  On the contrary, it was perhaps the most inconclusive and worthless testimony ever offered to support such an equitable defense as that pleaded in the case at bar.

II.   Nor did the plea of the statute of limitations fare any better under the testimony of said Ellen.  In her examination in chief, she states that she thinks her husband and herself moved upon the premises in 1872.  On her cross-examination, she says they moved on the place *after the settlement*, but the record shows that the settlement of the judgment, by marking it satisfied, did not occur till *July 8, 1873*, and how long after this that the house was built by the company for them and they were put into possession does not appear.  The bar of the statute had therefore not run, or what amounts to the same thing, was not shown to have run, against the plaintiff company,—even conceding that John McCarty's possession was really adverse.

III.   Nor could the irregularities which attended the amending of the petition, and the striking out the

name of John McCarty from the original petition, and the interlineation of the names of the defendants therein, strengthen the case of the defendants, nor aid the running of the statute. The defendants who were served with process were served before the statute of limitations could by any possibility have run; and whether the action was formally revived against them can cut no figure in the case, as they were brought into court, and this is all which could have been done even had the action been formally revived.

IV. And as the minors had been duly served with process, the delay which occurred in appointing for them a guardian *ad litem* did them no hurt.

The action of the court in instructing the jury to find for the plaintiff was proper, and judgment affirmed. All concur, except BARCLAY, J., not sitting.