WILLIAM C. TAYLOR, Plaintiff in Error, *v.* ELIAS E. WILLIAMS, Defendant in Error.

1. *Equity — Lands, sale of — Specific performance, discretion of court in enforcing.*—Whether a decree for specific performance shall be awarded in any particular case, is always a matter resting in the sound and reasonable discretion of the court, and it is held to be a reasonable exercise of this power to deny a decree when its allowance would be harsh or oppressive in its operation on either party.

2. *Contracts, specific enforcement of—Must be precise, etc.*—Contracts sought to be specifically enforced must not only be proved in a general way, but their terms must be so precise and exact that neither party could reasonably misunderstand them, and those terms must be satisfactorily established by the evidence.

*Error to St. Louis Circuit Court.*

*Casselberry*, and *Harding & Crane*, for plaintiff in error.

*J. Wickham*, and *A. Hamilton*, for defendant in error.

CURRIER, Judge, delivered the opinion of the court.

This is a suit in equity for the specific enforcement of a contract for the sale of real estate. It is based on the stipulation contained in the following receipt, to-wit:

"Received, St. Louis, April 30, 1864, of William C. Taylor, five dollars upon account of purchase money (two thousand five hundred and fifty dollars) of a tract of land in Central township, being entry No. 1,817, James Smith, s.w. fractional section 17, and containing fifty-one acres. The title, on investigation, to be satisfactory, and a warranty deed given. The terms of said purchase are one-fourth cash, the balance in one year, with the privilege of paying the same any time before maturity; the deferred payments to be secured by deed of trust on the property. [Signed] E. E. WILLIAMS."

Assuming that both parties were equally bound by the stipulation of this receipt, what did it bind them respectively to do? It clearly defines and identifies the property in question, and sets out definitely the terms of payment in case the proposed sale should be consummated; but it neither bound Taylor to take, nor Williams to convey, the premises unconditionally. The proposed conveyance was to be made only in case Taylor, on investigation, should be satisfied with the title. "The title," on investigation, was "to be satisfactory" to him, or there was to be no sale. That is the plain sense of the contract; too plain to be mistaken or misunderstood. The power was vested in Taylor to determine whether the trade should go on or be abandoned, so that he did not object to the title captiously or unreasonably.

Nor was it the duty of the defendant to furnish an " abstract of title," as claimed by one of the plaintiff's counsel. It was the duty of Taylor to investigate for himself, and, in a reasonable time, declare the results of such investigation. He did so,

6—VOL. XLV.

ST. LOUIS.

and, finding the title unsatisfactory, so notified the defendant, as the petition itself declares. This was a notification to the defendant that the plaintiff would not, as the matter then stood, proceed further with the transaction. Had nothing further been done on either side, it could not be pretended that any adequate foundation had been laid for the desired decree, however inconvenient it might have been for the plaintiff not to possess himself of the estate in question.

The plaintiff's counsel have not ventured to rest the case on grounds so wholly insufficient. They, therefore, seek to strengthen it by the introduction of an additional element, to-wit: a new promise — a promise to "perfect the title." There was no such undertaking in the original agreement. By that the plaintiff was to judge of the title and determine for himself whether he would proceed with the bargain. To make the new element available, the plaintiff avers in the petition that the defendant, on being informed of the defectiveness of the title as it stood, thereupon "undertook and promised to perfect the title;" that the plaintiff, in the meanwhile, relying on such new promise, held himself in readiness to take the property when the title should be made good. The attempt is to ingraft the new promise upon the old one, and thus bring it under the protection of the written agreement. The case is thus made to turn upon what of importance may be attached to this alleged new promise or engagement to "perfect the title."

The defendant, by his answer, denies the truth of the allegations, and puts the plaintiff upon his proof. The plaintiff was the only witness offered in support of the averments. He testified that Mr. J. G. Barry was the agent of the defendant, the defendant himself being a non-resident; that he notified Barry of the unsatisfactory character of the plaintiff's title, and that Barry thereupon said that "Williams was going to Kentucky, and would perfect the title." This is all the testimony on the subject. Barry, in his testimony, does not deny that he so said; nor does he admit it. Nor is there any testimony having the slightest tendency to show that the plaintiff's subsequent action was in any manner controlled or influenced by this supposed declaration of Barry.

But, assuming that Barry made the statement imputed to him, what does it amount to? Was Williams bound by it? Had Barry authority, by his verbal statement or otherwise, to enlarge, modify, or change the effect of Williams' written contract? There is nothing to show that he had — nothing beyond the mere fact that he was acting as Williams' agent, in subordination to the contract? But suppose he had the largest powers, what interpretation is to be placed upon his language? Was it the expression of an opinion, the declaration of a purpose? or was it a solemn engagement, on which the plaintiff was at liberty to rely, to do the thing suggested, and at whatever risk? In my opinion, this latter construction is not warranted. The subsequent conduct of the parties does not support it. Nor is there anything in the testimony which tends to show that either party acted upon the theory that this supposed declaration of Barry's in any way affected, enlarged, or modified their respective rights, as they existed under the original agreement.

The plaintiff was fully aware, as his own testimony shows, that the defendant had no paper title to the premises in suit, and that his possessory right to the land would not ripen into a perfect title till 1868, four years after the contract of sale. Now, if the alleged variation and enlargement of the original contract of sale is to avail the plaintiff for the purposes of this action, that variation and enlargement must have this extent, namely: that the plaintiff acquired thereby the right to lie by for four years, in the meanwhile enjoying the use of the purchase money, and then, at the end of four years, when the title should be perfected by lapse of time, to acquire the property at the same rate it was bargained for four years previously, when the title was under a cloud. This would be quite advantageous to the plaintiff, and equally disadvantageous to the defendant. It is a kind of arrangement that courts of equity are never eager to enforce in the way of specific performance. Whether a decree for specific performance shall be awarded in any particular case, is always a matter resting in the discretion of the court — not an arbitrary discretion, indeed, but a sound, reasonable, judicial discretion (2 Sto., § 742); and it is held to be a reasonable exercise of this

power to deny a decree where its allowance would be harsh or oppressive in its operation on either party. (Anthon v. Leftwich, 3 Randolph, 238.) To that effect are the authorities generally. This principle, applied to the facts of the case at bar, justifies the judgment of the court below.

That judgment is also defensible upon another ground, namely: that the proof does not establish, with sufficient clearness and certainty, the fact of a variation of the original contract, waiving the question of its competency. Failing in this, the action fails. The equivocal and unsatisfactory character of that testimony has already been adverted to. Courts of equity do not decree specific performance on the strength of such evidence. Contracts sought to be specifically enforced must not only be proved in a general way, but their terms must be so precise and exact that neither party could reasonably misunderstand them; and these terms must be satisfactorily established by the evidence. Any other rule would be of dangerous tendency. "If the contract," says Justice Washington, "be vague or uncertain, or the evidence to establish it be insufficient, a court of equity will not exercise its extraordinary powers to enforce it, but will leave the party to his legal remedy." (Colson v. Thompson, 2 Wheat. 336.) This principle is quite fatal to the plaintiff's case, in its application to the testimony by which the alleged variation or enlargement of the contract is sought to be sustained.

I discover no sufficient reason for disturbing the present judgment, and, with the concurrence of the other judges, it will be affirmed.