Strange v. Crowley.

STRANGE, *Plaintiff in Error*, v. CROWLEY.

1. **Evidence** : SECONDARY PROOF. Where a letter has been lost, or mislaid, it is competent to prove its contents by one to whom it had been shown.

2. **Specific Performance** : PROOF OF CONTRACT. The *onus* of establishing, by clear and satisfactory evidence, a contract which it is sought to have specifically enforced, rests upon the party setting it up, and unless he meets the requirement of the law in that respect, equity will not decree the specific performance.

3. **Contract, Acceptance of.** The acceptance to conclude a contract must be unequivocal, unconditional, and without variance between it and the proposal.

*Error to Johnson Circuit Court.*—HON. NOAH M. GIVAN, Judge.

AFFIRMED.

*S. P. Sparks* for plaintiff in error.

(1) The witness, Carradus, was incompetent to testify to contents of Strange's letter, in reply to Crowley's of November 2, 1882 ; he did not possess the necessary qualifications ; he had never seen Strange write, nor had he seen specimens of his hand-writing, and, afterwards, personally communicated with him respecting it. *Reyburn v. Belloti*, 10 Mo. 597 ; *State v. Scott*, 45 Mo. 302 ; *State v. Clinton*, 67 Mo. 380 ; *State v. Stair*, 87 Mo. 268 ; Abbot's Trial Evid. [Ed. 1881] pp. 394, 395 ; 1 Greenl. on Evid. [Ed. 1866] secs. 477–8 ; 2 Starkie on Evid. [Ed.

1832] 651, *et seq.*   (*a*) Where a witness has no personal knowledge of hand-writing, and can only testify by comparison of hand-writing in question with genuine signature, it is held inadmissible.   *O' Connor v. Layton*, 2 Am. Law Reg. [O. S.] 120 ; *Titford v. Knott*, 2 Johns. Ch. 211 ; *Rogers v. Ritter*, 12 Wall. 317 ; *Strother v. Lucas*, 6 Pet. 763.   (*b*) Such is the rule when the genuineness of the exemplar is undisputed, *a fortiori* as in the case at bar, when the witness was wholly devoid of any personal knowledge as to the genuineness of the letter whose contents he seeks to establish, but dependent entirely on what others tell him.   (*c*) Again, his testimony shows that whatever knowledge or information he had of the hand-writing of Strange was acquired to enable him to become a witness in this case ; for this reason he was incompetent, and his testimony inadmissible.   Abbot's Trial Evid. 395 ; 1 Whar. Evid., sec. 707.   (*d*) And still again, the letter attached as an exhibit to Crowley's deposition was not a writing already in evidence, and not put in, and could not be used by Carradus on which to base a comparison with the letter which was lost, and whose contents were sought to be established. *State v. Clinton, supra ;* 1 Greenl. Evid., sec. 578 ; Abbot's Trial Evid. 396.   (*e*) The answers to questions numbered three, four, five, six, and seven, were hearsay, being nothing more than what Crowley told him ; they were improperly admitted. 1 Greenl. Evid., secs. 98, 99.   (*f*) Exclude the testimony of Carradus, which is on the vital point in the case, and the finding and decree is clearly against the weight of the evidence.   (2) The letter of Strange's, replying to Crowley's of November 2, 1882, was an unconditional acceptance, and was not rendered nugatory by the immaterial addition, in which a hope or desire was expressed that he would only charge him six per cent. 1 Benj. on Sales [last Am. Ed.] p. 55, note.   (3) The refusal of a vendor's wife to join in a deed to release her inchoate right of dower, will present no obstruction

against a decree for specific performance. Story's Eq. Jur., sec. 793s; 5 Cent. Law Jour. 22; 49 Pa. St. 88; *Davis v. Parker*, 14 Allen, 94; 1 Sugden on Vend. p. 479, sec. 8, note *q*. (*a*) A purchaser in such case is entitled to specific performance, as far as the vendor can perform it, and to have an abatement out of the purchase money, or compensation for any deficiency in the title, quantity, quality, description, or other matters touching the estate. Story's Eq. Jur., sec. 779; *Water v. Travis*, 8 Johns. 465; *Ketchum v. Stout*, 20 Ohio, 453. (4) The testimony of Strange and Crowley shows that Strange continued in possession after the termination of his lease. The continuance of a possession taken, originally, under a contract which has expired, should be regarded as much a part performance as the taking possession under the contract, when substantial improvements are subsequently made on faith of the contract. 1 Story's Eq. Jur., 763*a*. (5) But Strange's testimony that the deed of trust given by him to Crowley, to secure his performance of covenants in the lease, which expired March 1, 1883, was satisfied after that time; that Crowley put him in possession of the premises; that he refused longer to rent it of Crowley, is, certainly, of great weight in determining the contention that the finding and decree was against the uncontradicted testimony in the case. *Thompson v. Henry*, 85 Mo. 451.

*Smith, Silver & Brown* and *E. A. Nickerson* for defendant in error.

(1) The *onus* of establishing, by clear and satisfactory evidence, the contract mentioned in plaintiff's petition, is cast upon him. *Taylor v. Williams*, 45 Mo. 80; 2 Story's Eq., sec. 742; *Collins v. Thompson*, 2 Wheat. 336. (2) The proposition contained in the defendant's letter of November 2, 1882, and the lost responsive letter thereto, did not constitute a contract, the specific

performance of which a court of equity would decree.
These writings, when taken together, must alone evi-
dence the contract, and parol evidence was not admissi-
ble to make out the contract.    The lost letter did not
contain an unequivocal, unambiguous, unconditional ac-
ceptance, without variance of any sort between it and
the proposal.   Pomeroy on Cont., sec. 63 ; Fry on Spec.
Perf., secs. 169, 170, 172.   (3) The minds of the
plaintiff and the defendant did not actually meet as to
the matter of the deferred payments of interest, defend-
ant proposing seven per cent., the plaintiff offering six
per cent.   Pomeroy on Cont., secs. 58, 63.   The renewal
interest provision in the proposition was an essential
part of said supposed contract, which rendered the same
impracticable and placed it beyond the jurisdiction of a
court of equity to enforce.   *Huff v. Shepherd*, 58 Mo.
242.   The supposed contract was incomplete, as to time ;
the making of the renewal notes, and the interest the
same should bear, was to be transacted in the future.
It could not be enforced for this reason.   Pomeroy on
Spec. Perf., sec. 143.   (4) The letters, upon which so
much stress is laid, which were received after the date
of the proposal letter and the lost letter of acceptance,
do not support the contract theory.   The offer of de-
fendant having once been declined by plaintiff, he
(plaintiff) cannot, by any subsequent assent, ratify the
original offer of defendant.   Fry on Spec. Perf., p. 138,
note.   The record discloses such contradictions and
conflicts in the evidence as must raise a doubt as to the
entire contract, and as to some of its material terms ;
and in such case the chancellor will not grant the rem-
edy, although partial performance of something has
been sufficiently proved.   Pomeroy on Cont., sec. 136 ;
*Foster v. Hale*, 3 Vesey, 712 ; *Allen v. Webb*, 64 Ill.
342 ; *Wright v. Wright*, 31 Mich. 380 ; *Mernterm v.
Bayless*, 33 Cal. 129 ; *Purcell v. Minor*, 4 Wall. 513.
(5) The chancellor was, presumably, acquainted with all.

the witnesses who testified in the case, and his finding therein ought to be deferred to by this court. *Snell v. Harrison,* 83 Mo. 651; *Sharp v. McPike,* 62 Mo. 300; *Hodges v. Black,* 76 Mo. 537; *Royle v. Jones,* 78 Mo. 403.

NORTON, C. J.—Plaintiff brought his bill in equity to enforce the specific performance of an alleged contract for the sale of certain land in Johnson county, which the trial court refused to decree, and rendered judgment for the defendant, and it is this action of the court that we are asked to review on writ of error.

On the trial, in support of the claim for relief sought by the petition, plaintiff put in evidence, among other letters, the following:

"ST. LOUIS, Mo., Nov. 2, 1882.

"*J. C. Strange, Esq.,—*

"Your recent letter to hand. Glad to know you are well. I am still in the city, but expect every day to leave; I shall leave between noon and Sunday, so it is best for you not to answer this until you hear from me again. In regard to my land, you can have it as usual for five thousand and five hundred dollars, paying two thousand dollars when lease is out, and balance in twelve months, at seven per cent., and renew the notes, if necessary, for more or less interest, to suit the times. The chances are good to believe the land will be worth a little more in twelve months from March than it is now, and I want, at least, the interest.

"Your friend,

"M. CROWLEY."

Plaintiff then testified, in his own behalf, and stated that in six or eight days after the receipt of the above letter he replied to it as follows:

"Mr. Crowley, I think you ought not to charge

more than six per cent., as you know I am paying you more for your land than any one else would give, but if you won't do that I will take your land at your offer— pay you two thousand dollars when the lease is out, and balance at seven per cent. in twelve months."

He also testified that he showed this letter to Mr. Taylor at Holden, Missouri, who read it, handed it back and said, that is just enough ; he then directed it ; that he was not certain where it was sent, as he (Crowley) was going about all the time. Plaintiff also testified to receiving several letters from defendant after sending the above letter, the first of which is dated in Texas, December 9, 1882. This letter does not refer, in any way, to his having received a reply from plaintiff in answer to the letter of November 2, 1882, but it is said in it : "My wife will not endorse a deed for my land at Holden that I offered you ;" that he would do the best he could in that respect.

The next letter is dated February 14, 1883, in which defendant says : "I expect you received my letter stating the objections my wife has to my selling my land. I shall see her on my return to Holden, and try and talk her into it." The next letter, dated April 14, 1883, in which, in speaking of his wife, he said : "She has not changed her mind on the deed question. I hope she will some time. If we can't *effect the sale* in time for wheat, you can rent it for the same, even though it would be better for both to have it settled for good." The next letter is dated June 16, 1883, in which he says : "Every thing I have paid cash for, and I kept it in my own name, and now I look on it very strange that I can't make a clear title, and get the full benefit of it; this half-way selling is very unpleasant. I hope we can settle matters without resorting to law, as that should be the last by all means. I expect you have consulted lawyers ; I have not, and don't intend to if I can help it."

Plaintiff further testified that defendant was at his house in March, 1883, and admitted that plaintiff's letter was an acceptance of his proposition as contained in his letter of November 2, 1882, but contended that his proposition and my acceptance did not make a contract unless some money had been paid; that he admitted, in the presence of Mr. Taylor, that he had got plaintiff's letter of acceptance; and that he, plaintiff, went into possession of the land, under the contract of purchase, after the lease which he had on the land expired, on the first of March, 1883. The evidence of plaintiff was corroborated by that of Taylor, as to what occurred before him, and also corroborated in regard to the contents of plaintiff's reply to defendant's letter of November 2, 1882. As to this letter Taylor said his recollection was indistinct; as well as he could recollect, Mr. Strange squarely accepted his offer; that there was something said about interest; his recollection was that Strange said that he ought to have the deferred payments at six per cent., and that if he, Crowley, would not take six per cent., he would pay what he asked, seven per cent.; that he told Strange at the time he read his letter that he considered it a fair acceptance of Crowley's proposition.

The deposition of defendant was then read, in which he was asked, "if he ever had any dealings with Mr. Strange in reference to the land, and, if so, to state the facts fully and particularly as to any negotiations looking to a purchase of the land by Strange?"

His reply was as follows: "In 1879 I leased the land to J. C. Strange for four years, in consideration that he was to make certain improvements. He went into possession under the lease, which was to expire March 1, 1883. During the continuance of the lease he made frequent offers to buy the land. About the first of November, 1882, I wrote to Mr. Strange, offering to take for the land five thousand and five hundred dollars—two

thousand dollars in cash, and the remaining thirty-five hundred dollars to be secured by note, due in one year, bearing seven per cent. interest from date. In a few days I received a letter in reply, saying he would take the land, but that he would not pay seven per cent. interest, but would pay six per cent. interest on deferred payments. I did not accept the proposition as modified by Mr. Strange, and wrote him that I would not sell my land." Defendant further testified that as Strange had not accepted his proposition, he attached no importance to the letter, and that it was lost or mislaid, and that, after diligent search, he had failed to find it. He also testified that he showed the letter received by him from Strange, to Joseph Carridus, at the Union depot in St. Louis.

The deposition of Joseph Carridus was read in evidence, in which he testified that the substance of the letter from Strange to Crowley was, that Strange accepted a proposition before that time made by Crowley, except that Strange, in the letter, said he would not pay seven per cent. on deferred payments, but offered to pay six: that he was positive that Strange refused to pay seven per cent. The evidence of this witness was objected to, and, as to all of it which was merely hearsay, should have been sustained, but so much of it as I have above recited was competent, for the reason that Crowley testified that he showed the letter he received from Strange to Carridus. This sufficiently identified the letter. The court did not err in receiving the evidence of Carridus as to its contents, the letter having been lost, or mislaid.

The *onus* of establishing, by clear and satisfactory evidence, a contract which it is sought to have specifically enforced, is cast upon the party who sets it up and asks its enforcement, and, unless this is done, a court of equity will not decree specific performance. *Taylor v. Williams*, 45 Mo. 80, and authorities cited. Nor if,

from all the evidence in the case, it is left in doubt whether a contract was concluded or not, a court of equity will not grant specific relief. Pomeroy's Spec. Perf., sec. 58. "A binding contract, enforceable in equity, may be concluded by the proposal of one party and the acceptance of the other." To make a concluded contract, the acceptance must be unequivocal, unconditional, and without any variance of any sort between it and the proposal. Fry on Spec. Perf., secs. 166, 167; Pomeroy's Spec. Perf., sec. 63.

Laying out of view the question as to whether the acceptance, as testified to by plaintiff and Taylor, of defendant's proposition contained in the letter of November 2, 1882, was or not such an acceptance as is prescribed in the rules above cited, the question still remains, has the plaintiff, by clear and satisfactory proof, established the fact that in his letter of acceptance he agreed to pay seven per cent. interest on the deferred payment, if defendant would not take six per cent. While the plaintiff and Mr. Taylor both testify that such were the contents of the letter, on the other hand, defendant and Mr. Carridus both testify with equal positiveness that plaintiff, in his letter, refused to pay seven per cent. on the deferred payment. In this state of the evidence, under the rule laid down in *Taylor v. Williams, supra,* and Pomeroy's Specific Performance, section 58, the trial court was justified in refusing to decree specific performance.

Presuming, as we must, that these witnesses were equally credible, we affirm the judgment on the ground that the plaintiff failed to make out his case, either by a preponderance of evidence, or by clear and satisfactory proof, as required by the rules of law in such cases. All concur.