TAYLOR *et al.*, *Appellants*, v. VON SCHRAEDER.

DIVISION ONE.

1. **Res Judicata.** A judgment against a married woman reversed, because a nullity cannot operate as *res judicata*.

2. **Equity :** SPECIFIC : PERFORMANCE : BURDEN OF PROOF. The burden of establishing by clear and satisfactory evidence a contract which it is sought to have specifically enforced rests upon the person who sets it up, and unless he meets such requirement a court of equity will not decree specific performance.

3. **Contract, Acceptance of.** The acceptance, to conclude a contract, must be unequivocal, unconditional and without any variance between it and the proposal.

4. **Parol Trust in Land :** EVIDENCE. The evidence to establish a parol trust in lands must be so cogent as to leave no room for reasonable doubt in the mind of the chancellor.

5. ——— : ———. The evidence in this case *held* to fall short of the requirements of the foregoing rule.

6. **Equity :** FRAUD OF CREDITORS : SPECIFIC PERFORMANCE. A court of equity will not enforce a contract made in fraud of creditors.

7. ——— : SPECIFIC PERFORMANCE. Nor will a contract for the sale of lands be specifically enforced where there was no delivery of possession thereunder and no valuable or permanent improvements made on faith of it.

8. ————; ————. Nor will such contract be enforced where it is merely executory and without consideration to support it.

9. ———— : FORECLOSURE SALE : CONTRACT. Where the execution of an agreement for the sale of land bought in by the creditor at a foreclosure sale under a deed of trust is made contingent on such creditor purchasing the property and the plaintiff has no interest in the property independent of the agreement, she is in no condition to complain that the sale was so managed that the property brought less than it should have been sold for.

*Appeal from St. Louis County Circuit Court.*—Hon. W. W. EDWARDS, Judge.

AFFIRMED.

*Laughlin, Thoroughman & Priest* for appellants.

(1) *First.* A judgment is the decision and sentence of the law propounded by the court or other competent tribunal upon the matter contained in the record. Freeman on Judgments, pp. 1, 2 ; 6 Wait, p. 767, and citation ; *Crosby v. Jerome,* 37 Ind. 264. *Second.* And such a judgment is conclusive, even if erroneous, till regularly annulled or reversed by an appeal for that purpose. Wells on Res Adjudicata, sec. 6, p. 4 ; *Hollester v. Abbott,* 11 Foster ( N. H.) 448 ; *Aurora City v. West,* 7 Wall. 82 ; *Board v. Fowler,* 19 Cal. 13 ; *Commissioners v. Lucas,* 93 U. S. 113 ; *Attorney General v. Lung,* 2 Wis. 514. *Third.* And the effect of such a reversal is to leave the parties just as they were before the judgment was rendered. *Gott v. Powell,* 41 Mo. 417 ; *Jones v. Hart,* 60 Mo. 364; *Brown v. Troup,* 33 Miss. 35 ; Freeman on Judgments, 482. *Fourth.* And the time during which such appeal was pending cannot be taken advantage of in any subsequent proceeding between the parties on the ground of laches. *Crispen v. Hannovan,* 86 Mo. 160. (2) *First.* Where an infant has executed a contract on his part, although not enforceable against him, still equity will decree specific

performance. *Clayton v. Ashdown,* 9 Viner's Abridg.; *Wright v. Schuyler,* 31 How. Pr. 41 ; Story Eq. Jur., sec. 736. *Second.* And where the contract, if fair, founded on a valuable consideration ( and a promise is a sufficient consideration for a promise, 1 Par. Con. 448-51), and the plaintiff has shown an intention in good faith to execute it, a decree for specific perform-ance is a matter of right. 2 Bishop on Law of Married Women, sec. 250 ; *Bliss v. Safe,* 4 American L. J. 508 ; *Shannon v. Wright,* 49 N. Y. 227 ; *Losee v. Morey,* 57 Barbour, 561. (3) While it is the general rule that contracts must be mutually enforceable. (Frye on Specific Performance; *Mastin v. Halley,* 61 Mo. 196 ); yet it is the duty of the other party on the lack of mutuality appearing by reason of incapacity to rescind the contract, otherwise he cannot be heard to plead lack of mutuality. Frye, Spec. Per., secs. 447, 448, and cita-tions ; *Gupton v. Gupton,* 47 Mo. 432 ; *Sutton v. Hayden,* 62 Mo. 114 ; *Hyatt v. Williams,* 72 Mo. 214 ; *West v. Bundy,* 78 Mo. 410 ; *Anderson v. Shockley,* 82 Mo. 50. (4) It is the rule in equity, that where one has been placed in such a position by a partial performance, that it would be a fraud on him if the contract was not fully executed, then equity will interfere, notwithstanding the statute. *Rose v. Bates,* 12 Mo. 21 ; *Farrar v. Patton,* 20 Mo. 85 ; *Price v. Hart,* 29 Mo. 171 ; *Taylor v. Luther,* 2 Sum. 232 ; *Thompson v. Henry,* 85 Mo. 451 ; *Webb v. Toms,* 86 Mo. 591 ; *Langton v. Bates,* 84 Ill. 524. (5) Where a contract has been fully executed by one party, equity will compel the other party to perform his part. *Walker v. Walker,* 2 Ark. 100 ; *Wells v. Reynolds,* 66 N. Y. 237 ; *Digby v. Jones,* 67 Mo. 104 ; *Neale v. Neale,* 76 U. S. 1-13. (6) The evidence in this case shows that it is clearly taken out of the operation of the statute of fraud. *Self v. Cordell,* 45 Mo. 345 ; *Tatum v. Brooker,* 51 Mo. 148 ; *Blanton v. Knox,* 3 Mo. 342 ; *Suggett's Adm'r v. Cason's Adm'r,* 221 ; *Simmons v. Headlee,* 94 Mo. 488 ; *Rose v. Bates,* 12 Mo.

21-48; *O'Fallon v. Clopton*, 89 Mo. 287; *Turner v. Johnson*, 95 Mo. 431-47. (7) Notwithstanding the statute, if a married woman has done all on her part required by the contract, it will be enforced against the other party. 2 Bishop, Law of Married Women, sec. 250; *Neff v. Redman*, 76 Mo. 195; *Walker v. Owen*, 79 Mo. 563; *Shroyer v. Nickell*, 55 Mo. 264.

*Cecil V. Scott*, also, for appellants.

(1) The contract in question is established by clear and satisfactory proof; that it is denied, as contracts of this character usually are, does not necessarily raise a reasonable doubt. (2) A married woman may enforce a contract executed by her, either in whole or in part, and remaining executory on the part of the person contracting with her. *Chamberlin v. Robertson*, 31 Iowa, 410; *Neff v. Redmon*, 76 Mo. 195; *Walker v. Owen*, 79 Mo. 563; *Overspeck v. Thiemann*, 92 Mo. 475; *Dickson v. Kempinsky*, 96 Mo. 258. (3) The fact that part of the consideration of a contract consists of covenants of a married woman, which could not be enforced by reason of her coverture, of which the other party had knowledge, does not avoid the contract. *Dickson v. Kempinsky, supra.* (4) Where one in pursuance of, and on the faith of, an oral promise that he shall have a deed for land enters into possession and makes valuable improvements, the case is taken out of the statute of frauds, and he is entitled to a decree for specific performance. *Anderson v. Shockley*, 82 Mo. 250; *Chamberlin v. Robertson, supra; Neff v. Redmon, supra; Thompson v. Henry*, 85 Mo. 456; *Webb v. Toms*, 86 Mo. 591; *Overspeck v. Thiemann, supra.* (5) All that is required is that the possession should be taken in pursuance of the contract or that it be referable to the contract. *Simmons v. Headlee*, 94 Mo. 482. (6) An agreement of a creditor, secured by deed of trust, to buy the property in at the sale and hold it for the

debtor, or convey it to the debtor or his appointee upon payment of the mortgagee's debt, is not within the statute of frauds. *Damschrader v. Thias*, 51 Mo. 100 ; *O' Fallon v. Headlee*, 94 Mo. 482 ; *Simmons v. Headlee, supra ; Turner v. Johnson*, 95 Mo. 431. (7) Where a party to a contract refuses to permit a performance on the part of the other party thereto, such refual is taken as equivalent to a performance for the purpose of maintaining an action on the contract. *Park v. Kitchen*, 1 Mo. App. 358 ; *McGullough v. Baker*, 47 Mo. 401 ; *Ehrlich v. Ins. Co.*, 88 Mo. 257. (8) A judgment reversed with the usual mandate becomes mere waste paper ; neither party can suffer detriment or receive assistance from the former adjudication ; it confers no rights, and has no vitality for any purpose. *Crispen v. Hannovan*, 86 Mo. 167 ; *Atkison v. Dixon*, 96 Mo. 587. (9) Any relief appropriate to the facts alleged and approved may be granted under a prayer for general relief. *Pomeroy v. Benton*, 57 Mo. 550 ; *Snider v. Coleman*, 72 Mo. 568 ; *Bevin v. Powell*, 83 Mo. 365. (10) A claim that a contract is fraudulent as to creditors must come from the latter and not from parties to it. *Larimore v. Tyler*, 88 Mo. 661 ; *Burns v. Bangert*, 92 Mo. 177. (11) The court below erred in dismissing the bill. It should have decreed specific performance of the contract.

*Kehr & Tittman* for respondent.

(1) *First.* The *onus* of establishing by clear and satisfactory evidence the contract which the appellants seek to have specifically enforced rests upon them. *Taylor v. Williams*, 45 Mo. 208 ; *Strange v. Crowley*, 91 Mo. 287. *Second.* The evidence to establish the fact must be clear, strong, unequivocal, so definite and positive as to leave no room for doubt in the mind of the chancellor. *Johnson v. Quarles*, 46 Mo. 426 ; *Forrester v. Scoville*, 51 Mo. 208 ; *Woodford v. Stephens*,

Taylor v. Von Schraeder.

51 Mo. 433; *Modrell v. Riddle*, 82 Mo. 36; *Rogers v. Rogers*, 87 Mo. 257; *Adams v. Burns*, 96 Mo. 361. ( 2 ) The testimony for the plaintiffs shows no contract. *First.* No words of agreement or promise were used. The subject and terms of the supposed contract were not defined, and there was no intention to assume contractual obligation. *Second.* A contract to be enforceable must be mutual. Whilst it is claimed that Mrs. Von Schraeder agreed to sell, it is neither alleged nor proved that Mrs. Taylor agreed to buy. Indeed, being a married woman, she could not legally obligate herself to buy. *Mastin v. Halley*, 61 Mo. 200; *Paris v. Haley*, 61 Mo. 457; *Sitton v. Shipp*, 65 Mo. 297. *Third.* Nothing was paid, and nothing in excess of what was already due Mrs. Von Schraeder was to be paid. No promise to buy or pay was made by Mrs. May L. T. Taylor, and being under coverture none legally binding on her could be made. There was, therefore, no consideration. *Slowey v. McMurray*, 27 Mo. 117. ( 3 ) The scheme to transfer the title in the manner alleged in the petition was devised and intended by the parties claiming under it to defraud the creditors of Mrs. Mary Taylor. The law will not aid a person engaged in such fraud to reap the fruits of it. *Hamilton v. Scull's Adm'r*, 25 Mo. 166; *Fenton v. Ham*, 35 Mo. 409.; *Clarkson v. Creely*, 40 Mo. 114; *Larimore v. Tyler*, 19 Mo. App. 445; *Larimore v. Tyler*, 88 Mo. 661. A secret arrangement between a defendant in an execution and a third person for the purchasing of property by the latter, the object of which is to defraud other creditors of the execution defendant, will not be enforced in a court of equity. *Walker v. Hill's Ex'r*, 7 C. E. Green, 513; *Marlatt v. Warwick*, 4 C. E. Green, 439; *Crosier v. Acer*, 7 Paige, 137; *Baldwin v. Campfield*, 4 Halst. Ch. 891; *Servis v. Nelson*, 1 MacArthur, 94. ( 4 ) The alleged agreement to convey being by parol is void under the statute of frauds. Appellants concede the proposition, but seek

to bring themselves within the exception by averring :
*First*, part performance of the agreement, and, *second*,.
inadequacy of price at the sale under the deed of trust,.
brought about by their own efforts to prevent compe-
tition at the sale. (5) To take the case out of the
statute, the possession must be delivered in pursuance
of the contract and with a view to the performance of
it. *Purcell v. Miner*, 4 Wall. 513 ; *Williams v. Morris*,.
95 U. S. 444 ; Story's Eq. Jur., sec. 763. *First.* Mrs.
Von Schraeder, the supposed vendor, did not have the
possession, and, therefore, could not deliver it. Nor
do appellants claim to have derived their possession.
from her, but from Mrs. Mary L. Taylor. *Second.* The
latter did not, in fact, give them possession, nor could.
she, for she had none to give. The possession was in
her husband, Wm. C. Taylor. The possession of the
wife is the possession of the husband. *Gray v. Dryden*,.
79 Mo. 106 ; *Kanaga v. Railroad*, 76 Mo. 207 ;
*Mueller v. Kaesmann*, 84 Mo. 318 ; *Wilson v. Garaghty*,
70 Mo. 517 ; *Weil v. Simmons*, 66 Mo. 617 ; *Hunt v.
Thompson*, 61 Mo. 154 ; *Meegan v. Gunsollis*, 19 Mo.
417. *Third.* Improvements to constitute part perform-
ance must be both permanent and valuable ; they must.
add some permanent and substantial benefit to the soil.
Repairs of fences are not such improvements. (6)
Appellants had no interest whatever in the property,
and, therefore, were not injured by the sale ; nor was
the defendant guilty of any conduct which tended to
prejudice the owner. No trust, therefore, has arisen.
*State ex rel. v. West*, 68 Mo. 232 ; *Lenox v. Harrison*,
88 Mo. 491 ; *Parker v. Bragg*, 11 Humph. 212 ; *Levy
v. Brust*, 45 N. Y. 589 ; *Bauman v. Holzhausen*, 33
N. Y. Sup. C. ( 26 Hun ) 505–7 ; *Rose v. Bates*, 12 Mo.
30 ; *Stowey v. McMurray*, 27 Mo. 113 ; *McNew v.
Booth*, 42 Mo. 189 ; *Hammond's Adm'r v. Cadwallader*,.
29 Mo. 166 ; *Wheeler v. Reynolds*, 66 N. Y. 235 ;
*Kellam v. Smith*, 33 Penn. St. (9 Casey ) 158. Pomeroy
on Spec. Per. of Contracts, sec. 144, p. 206. (7) In the

ejectment suit Mrs. May L. T. Taylor had the right and the opportunity to interpose as a defense, and did interpose the same facts upon which she relies in this suit. She is precluded by the former suit and judgment. *Kelly v. Hurt*, 74 Mo. 561 ; *Bobb v. Graham,* 89 Mo. 200 ; *Preston v. Ricketts*, 191 Mo. 320.

BRACE, J.—This is an action by petition in the nature of a bill in equity for the specific performance of an alleged parol contract for the conveyance of a tract of land known as the Mount farm, in St. Louis county, containing about four hundred and fifty acres.

On the twentieth of August, 1872, William C. Taylor being the owner, with his wife, Mary L. Taylor, executed a deed of trust conveying said land to William Pettis and Charles Parsons, trustees, to secure the payment to Frederick Von Schraeder of seven promissory notes—one principal note of $20,000, payable three years after date, and six interest notes each for $1,000, due respectively in six, twelve, eighteen, twenty-four, thirty and thirty-six months after date, all of said notes bearing interest at the rate of ten per cent. per annum after maturity, the grantors covenanting to pay all the taxes to be thereafter assessed against the property, and any failure to do so to mature said notes.

Afterwards, on the twenty-seventh of October, 1876, the said William C. Taylor conveyed, subject to the deed of trust, said land to Marcus A. Wolff, in trust for the sole and separate use of his said wife, Mary L. Taylor. Mrs. Mary L. Taylor resided in the mansion house on said farm, occupying about thirty acres in connection therewith as her home, the remainder being rented to tenants and yielding a rental of about $1,300 per annum. Frederick Von Schraeder having died, his widow, the defendant herein as his legal representative, became the holder of the notes secured by said deed of trust. The interest notes seem to have been paid as they matured, and the interest on the principal

note paid up to August, 1876 (the time of payment of the principal note having been extended on the tenth of August, 1875, to August 20, 1876). The latter note and interest thereon from the date last aforesaid, remaining unpaid, together with the taxes for the years 1872, 1873, 1874, 1875 and 1876 inclusive, the defendant a short time prior to March 6, 1877, directed the trustee to sell the land for the payment of the debt. They accordingly advertised the land for sale at public auction by virtue of said deed of trust, and on the twenty-ninth of March, 1877, the same was sold in pursuance of the terms of said deed of trust, and the defendant became the purchaser thereof at the price of $21,460, about the amount of the debt, interests and costs. The additional amounts she paid to redeem the land from unpaid taxes made the whole cost of the property to her $24,291.36.

Several witnesses were introduced on each side who gave opinions of the value of the land at the date of the sale, ranging in their estimates from $60 to $150 per acre.

Some time after the sale the defendant obtained possession of part of the land by attornment of some of the tenants, and of the remainder by an action of ejectment in the circuit court of St. Louis. To this action of defendant, in which the plaintiff, Mortimer L. Taylor, husband of plaintiff, May L. T. Taylor, and others were parties defendant, the said May L. T. Taylor, plaintiff, became a party, and, in a separate answer, set up as a defense thereto the same contract which she now seeks to have specifically enforced by this action. From the judgment rendered against the defendants in the ejectment suit they appealed to the St. Louis court of appeals, but failing to give a *supersedeas* bond, the defendant herein had her writ and was put in possession. The court of appeals affirmed the judgment of the circuit court, but upon appeal to this court the judgment against the plaintiff herein, May L. T. Taylor,

and her mother, Mary L. Taylor, was reversed for
the reason that they were married women, and not
proper parties to the suit, and affirmed as to their
husbands and the other parties defendant in that suit.

The contract set out in the petition, which plain-
tiffs now seek to have enforced, is substantially that at
some time before the sale under the deed of trust,
Mary L. Taylor having made an agreement with
her daughter, the plaintiff, May L. T. Taylor, to
convey to her the real estate in question in con-
sideration of love and affection, and that her daugh-
ter and her husband would provide a home for her dur-
ing her natural life, the defendant, in order to effectuate
said purpose, entered into an agreement with the said
May L. T. Taylor, by which it was agreed that the
defendant should cause the land to be sold under said
deed of trust, and at said sale would purchase and
thereafter convey the same to the plaintiff, May
L. T. Taylor, and the said May L. T. Taylor, with
her husband, would execute a note and a deed of
trust upon the property to secure the payment
of $20,000, and pay all accrued interest and taxes, and
costs of the sale, and any other moneys that might be
found to be due on said real estate, except the said sum
of $20,000, so to be secured by said deed of trust.

The petition then avers in substance that the sale
under the trust deed was advertised and made, and the
land purchased by defendant, in pursuance of said
agreement; that immediately upon the advertisement of
said property for sale, and in pursuance of said agree-
ment, the said May L. T. Taylor took exclusive posses-
sion of said real estate and made valuable improvements
thereon, with the knowledge of defendant, expending
therefor large sums of money, etc.; that the fact that
said sale was to be made merely for the purpose of
transferring the title of the said Mary L. Taylor to her
said daughter, May L. T. Taylor, was made known to the
public in various ways by all the parties concerned in

said sale by reason of which parties who otherwise would have attended the sale remained away ; that the land was worth $75,000, and would have brought that amount but for the facts stated ; that the plaintiff, May L. T. Taylor, relying upon the good faith of defendant, at great sacrifice, procured the money required to pay the interest, taxes and expenses of the sale aforesaid, was willing and ready to pay the same and to execute said deed of trust, but that defendant refused to furnish the amount of interest, taxes and costs or to comply with the terms of her said agreement.

The answer admitted the execution of the deed of trust, sale and purchase, the recovery in the action of ejectment, and that defendant is in possession of the premises ; denied all the other material allegations in the petition, and set up pleas of the statutes of limitations and frauds, and a plea of *res adjudicata.* The court upon the hearing dismissed the bill, and plaintiffs appeal.

For the purpose of proving the contract set out in the petition the plaintiff, May L. T. Taylor, her husband, Mortimer F. Taylor and her mother, Mary L. Taylor, were introduced as witnesses, who all testify that they were present, and, with defendant, were the only persons present at the defendant's house when and where the alleged contract was made. Their testimony is too voluminous to be set out in full. Mr. Taylor was the spokesman, and acted as the agent and attorney of his wife, who, with her mother, substantially corroborated his testimony as to what passed at this interview. It will be sufficient to set out the conversation between him and Mrs. Schraeder as detailed by him, by which plaintiffs claim the contract in question was made. After answering some preliminary questions and making some introductory observations, he said : "We went immediately to the matter in hand and I said to her ( Mrs. Schraeder ) that at the request of my wife and mother I had come up to see if there was

possibility of making the arrangement by which the property could be saved to the family.   *   *   *   She asked me what plan I had in view?   I told her I would be very glad if some arrangement could be made by which I could get time to make a new loan on the place ; that I thought I could get the money from some insurance company ; that the interest was small as compared with the margin of the equity in the place.   She then told me what I did not know before, that the taxes had not been paid on the property for a long time, and the property had been sold for a non-payment of taxes, and they had accumulated to such an amount that she did not feel like letting it run on in that way ; that the interest she received from it constituted a large part of her income, and she needed the money.   I said I could pay the interest, but it was the danger of having the property sacrificed of which I was afraid, and if I had a little time I thought I could borrow the money through some agents of eastern insurance companies that were here.   She said. ' I don't want my principal at all.   Why not carry the loan as it is?   It will save making a new loan.'   I said, ' I would be very glad to do it, and if it meets with your approval I will do it.   I am afraid if the property is carried in Mrs. Taylor's name, she having no business qualifications at all, she signing such notes as her husband is asking her to sign, I am afraid she will involve herself as she has signed a great many.'   She said, ' Mrs. Taylor and I are old schoolmates and I would rather sacrifice what I have in it than be instrumental in taking the home from her.   I would do anything reasonable to keep the property in the family.'   I said, ' If you will sell the property under the deed of trust, the conditions having been broken, and buy it in and then deed it to my wife, we will execute a note for your principal and pay the interest and back taxes.'   She said, ' I will gladly and willingly do that, you will have to see Mr. Parsons, who is my personal friend and agent and the trustee in the deed of trust.'   I told her

I would do so, and she said, 'I want you to understand, however, that if the property is sold I shall not consider myself bound to bid one dollar more than my debt and I do not know what that is until Mr. Parsons lets me know the back taxes on the property.' I said, 'I do not contemplate your paying any money to Mrs. Taylor to make the transfer to my wife ; that is not within our minds at all ; if the property be sold I am satisfied that we can prevent any person in the neighborhood bidding on it by demanding the whole of the purchase money if any person buys it—$25,000 or $30,000, in a short time. I do not think any person will bid against you, but if they do and it goes we cannot help it.' "

The witness says this was practically the close of the interview between the parties. Upon being further interrogated as to whether Mrs. Von Schraeder said anything about intending to request a foreclosure he answered : "The only way that it was referred to at all was the remark to Mrs. Taylor that the whole of the loan was not hers ; that it was made to her husband ; that her children were interested in it, her husband having died, and added she would sacrifice the whole of it, if it was hers, rather than take the property from Mrs. Taylor." And in this connection the witness testified that at that time the property had not been advertised ; that he looked for it in the paper next morning but did not see it, and didn't see it until the morning after ( as the advertisement was first inserted in the paper on the sixth of March, conceding that the advertisement he then saw was the first one ; this interview must have been as late as the fourth of March, instead of the latter part of February, 1877, as he testifies in the beginning ).

The witness then testifies that he did not again see either Mrs. Von Schraeder or Mr. Parsons until the day before the sale. He testifies that on that day, "I went to see her and she came into the parlor. I said to her, 'Mrs. Von Schraeder I have come to ask you to

withdraw the property from sale ; I have learned that a party not having a friendly feeling to the family has determined to purchase it, and I am afraid the plan we have in view is going to result in the loss of the property. I am willing to pay the expenses incident to the sale and pay the interest; for my wife I ask you to withdraw the property from sale.' She says, ' So far as I am concerned I am willing to do it, but prefer you go and see Mr. Parsons as he is trustee and agent, and whatever he says about the matter I will be satisfied with.'" He testifies that he then went to see Mr. Parsons. Having found him, he says: "I told him what Mrs. Von Schraeder had said to me and what I had said to her as I have already testified, and asked him if he would consent to accept the amount of the printer's bill and withdraw the property from sale. He laughed and said that Mrs. Von Schraeder must talk one way to him and another to me ; that she was determined to have the property sold. I said, ' She has not so spoken to me to-day; if you will withdraw it from sale she will be perfectly satisfied.' He said, 'I will not withdraw it unless I get a written order from her.'" He then testifies that he did not again see either Mrs. Von Schraeder or Mr. Parsons until the next day at the sale, when he had an interview with Mrs. Von Schraeder in front of the east door of the courthouse where she was in her carriage with a Mrs. Clements. Mr. Parsons not being present but on the front steps of the courthouse with his co-trustee, Mr. Pettis.

The witness was asked what occurred then, and answered, "I said: 'I have just sent Mrs. Taylor to the house to see if you will not withdraw the property from sale, I hope now you are here, with Mr. Parsons he will consent to it being done. * * * We talked some time, and she said, 'I do not know whether we are going to get the money from the place or not, even if we carry the loan on.' I said : 'We have every confidence in the world in turning the property and we

certainly would pay the interest and carry the loan until its maturity.' She, from her disposition, seemed to be wavering and seemed to be inclined to withdraw the property, and Mrs. Clements said to sell the property and get the money, and if the person was there to pay cash, let it go, and get the money. I saw my efforts to get the sale withdrawn were unavailing and joined those on the steps in front of the courthouse. * * * The advertisement was read; the auctioneer asked if the whole of it should be put up. I said to Mr. Parsons, 'If you will demand that the whole of the money shall be paid in an hour I will consent that it shall be put up in a lump.' The auctioneer said that the whole of the money would have to be paid in an hour at the State Savings Bank."

He then says it went up on $1,500 bids until it was finally struck off to the person who was bidding for Mrs. Von Schraeder at her bid (about the amount of the debt). He then says, "I went to the carriage, I do not know who notified her or whether she could hear the bidding, she seemed to be aware of the fact that the property had been knocked down to her, and she said, 'Now it has gone the way you wanted it anyhow.' I says, 'It has, but I am afraid it is accidental.' She says, 'Whether it was or not it has gone your way. Now do you propose to carry out *the agreement you spoke of?*' I said, 'Madam, I shall only be too glad to do it. I wanted to do it in the first instance, and the only reason why I wanted you to withdraw it from sale was, I was afraid I would not be able to carry it out, and the property would be sacrificed.' She said, 'You must see Mr. Parsons and see about carrying this out.' I was standing at the north abutment of the courthouse and said to Mr. Parsons, 'When can I get from you the amount of the interest and back taxes on the property.' He spoke up rather gruffly, and said, 'I am not going to be all the time waiting to carry this out, you will have to be doing it between now and Saturday

or it will not be done.' I said, 'I do not want any longer time.' I said, 'I will send to your bank, and as soon as you get the information furnish it to me.'"

The witness then testifies that he did not again see Mrs. Schraeder or Mr. Parsons in regard to this matter; that the sale took place on Wednesday or Thursday; that on the afternoon of the sale he sent his brother-in-law, Philip V. Taylor, to the bank to see Mr. Parsons and get information of the amount that would have to be paid; that he sent a note to him to the same purpose by his office boy the next afternoon. Again on Saturday and again on Monday, but received no reply, the messenger boy reporting on Monday that Mr. Parsons said, "It was useless to be writing him any more notes," and that he was tearing them up and throwing them in the waste basket. About the same time a gentleman representing himself to be the agent of Mrs. Von Schraeder presented himself and demanded possession, and this ended the negotiations.

Mr. Mortimer Taylor further testifies, that in this matter he was acting as the agent and attorney of his wife; that the alleged contract was made by and for her. Mrs. Mary L. Taylor testifies that six or seven months before the alleged contract was made she had turned over all her property to her daughter, May L. T. Taylor. And it appears from the evidence that for some time previous to the first interview between them and Mrs. Von Schraeder, the mother and daughter and her husband had been living together in the mansion house on the premises, that the mother was already largely indebted and was being pressed upon her liabilities; and that in order to save her property from the claims of her creditors she had turned it over to her daughter, and she and her daughter and her daughter's husband concocted and presented to Mrs. Schraeder the scheme of having a sale made under the deed of trust as alleged in the petition for the purpose of saving the mother's interest in the farm, by vesting the title in the daughter, subject to the deed of trust.

The foregoing is substantially the evidence upon which a court of equity is called upon to declare that the defendant accepted this scheme, and bound herself to carry it out.

Mrs. Von Schraeder and her daughter and Mr. Parsons testified for the defense, the testimony of the former and the latter so far as they bear directly upon the matters set out in the plaintiff's evidence is as follows:

Mrs. Olivia Von Schraeder, plaintiff, testified: "In February or March, 1877, I called upon the trustees and requested foreclosure; they advertised the property for sale under the deed of trust. I remember receiving a visit from Mrs. Mary Taylor and Mortimer F. Taylor, at my house on Garrison avenue; the property was advertised for sale under the deed of trust at the time. They were the only two that came to the house, the only ones I saw,—Mrs. William G. Taylor and her son-in-law, Mortimer F. Taylor. I did not see them at my house but once. I had never seen Mrs. May L. T. Taylor until she was pointed out to me at the county seat when we met there on Monday. The mother I know, but the daughter I did not know. I never met her and had no acquaintance with the daughter at the time of the visit from Mrs. Mary Taylor and Mr. Mortimer F. Taylor. On that occasion Eloise Von Schraeder was present. She entered the room with me and remained until they left. On that occasion Mrs. Taylor was much affected, and she wept. Mr. Taylor did all the talking, and I did the listening. It was to postpone the sale. The visit was that the sale should be postponed; the sale of the Mount farm, then advertised to be sold. Mrs. Taylor was much affected, and I would like to have done something for her. Nothing was said, only to postpone the sale, and Mrs. Taylor recounted her troubles, which were very harrowing to the feelings of a woman who had been the schoolmate of Mrs. Taylor. I think they both asked it. They did not ask that anything else be done except that a postponement of the

sale be granted.   I did not assent to a postponement.   I
had determined upon a sale, had made up my mind.
Neither Mr. Mortimer F. Taylor nor Mrs. Mary Taylor
asked me to sell the property under the deed of trust.
Nothing was said about buying it in at the sale.  I said I
would bid only my amount on it.  The name of Mrs. May
L. T. Taylor was not mentioned in the conversation at my
house.   Mr. Mortimer F. Taylor did not make any
statement to me to this effect:   'If you will sell the
property under the deed of trust, the conditions having
been broken, and buy it in, and then deed it to my wife,
we will execute a note to you for your principal, and
pay the interest and back taxes. '   He did not say any-
thing to this effect in substance.   I did not make the
remark or response to Mortimer F. Taylor:   'I will
gladly and willingly do that.'   I directed him to call on
Mr. Parsons in order to end the interview. I stated that
I acted only with the advice of Mr. Parsons, left every-
thing in his hands.   I did not hear Mr. Mortimer F.
Taylor at any time prior to the sale, either at my house
or elsewhere, say that he had heard that certain parties
were going to bid upon the property, and that he
desired me to withdraw the sale.   Neither Mr. Morti-
mer F. Taylor nor Mrs. Mary Taylor made statement to
me, at any time, to the effect that statements were to be
made with a view to prevent bidders from appearing at
the sale and to refrain from bidding, and I did not know
of any purpose on the part of anyone to endeavor to
prevent bidding or competition at the sale.   I did not
have any such purpose myself, and took no steps to that
end.   I would much rather not have bid in the property ;
did not agree with anyone to buy it in at the sale ; do not
know of any person who was prevented or deterred from
appearing or bidding on the property.  I was present at
the sale ;  my son-in-law, Mr. Clements, bid for me ;
there was competition.   I do not remember whether Mr.
Mortimer F. Taylor was there or not.   I  don't know

that I would have recognized him again. My son-in-law's name was James B. Clements ; he is dead. Mr. Parsons and Mr. Pettis were at the sale. I do not remember any conversation with Mr. Mortimer F. Taylor at the carriage door immediately after the sale had taken place. I think the trustee, Mr. Parsons, figured the amount due me at the time of the sale. The aggregate amount of taxes and interest was about $3,000 ; the note and interest was about $21,000—to which was to be added the taxes."

Miss Eloise Von Schraeder's testimony in regard to the interview, at which she says she was present, was to the same effect as her mother's.

Mr. Parsons testified :    "I remember making a sale under the deed of trust. I advertised the property at the instance of Mrs. Von Schraeder. It was advertised in order to get the title to the property, or the money, either one or the other. I think I was called upon prior to the sale by young Mr. Taylor who testified yesterday (Phil. V. Taylor). I think I saw Mortimer F. Taylor also once before the sale. Mr. Philip and M. F. Taylor met me at the Four Courts, I think, within a day or two of the sale and wanted it postponed. I am under the impression that I received some notes from Mortimer F. Taylor before the sale. I have not any recollection of receiving any note or memoranda from Mr. Taylor after the sale. My impression, that the burden of these notes was to get the sale postponed. Mr. Pettis and myself attended the sale, and made it as trustees. Nothing was said or done at the sale, or at any time before to my knowledge to deter bidders. I desired to sell for money. I had not been informed at any time prior to the sale that anyone had undertaken or was engaged in efforts to prevent competition at that sale. I urged Mrs. Von Schraeder before the sale if she got a payment of the interest and taxes to let the matter run, or if she could get $2,000 even, because I did not think the property

worth the money, or at least I thought it was very unde-
sirable for her.  I did not understand that she was
anxious to own the property."   *   *   *

"Q.  Isn't it likely, inasmuch as you were advising
her to get a payment from the parties in interest, if she
could, and they were calling to see you, that you were
expecting this sale to be stopped by the payment or by
some arrangement between the parties?  A.  After it
was advertised I hoped they would make a payment,
and advised her if they did, to stop the sale.  I said:
'If they offer you a reasonable payment, I certainly
would postpone the sale.'

"Q.  Did she tell you that the Taylors had called
to see her about the matter?  A.  She said they had
called to get the sale postponed."

I.  The plea of the statute of limitations seems to
cut no figure in the case.  The plea of *res adjudicata*
is not sustained by the record of the ejectment suit.  It
is true that the cause of action herein set out was
pleaded by May L. T. Taylor in that suit, and judg-
ment was rendered against her in the circuit court,
which was affirmed in the court of appeals; but upon
appeal to this court that judgment against her upon her
separate plea was reversed, and held to be a nullity,
she being a married woman, consequently there was no
final adjudication of that plea, or of the present cause
of action.

II.  "The *onus* of establishing by clear and satis-
factory evidence a contract which it is sought to have
specifically enforced is cast upon the party who sets it
up, and asks its enforcement, and unless this is done a
court of equity will not decree specific performance."
*Strange v. Crowley*, 91 Mo. 287; *Taylor v. Williams*, 45
Mo. 80; *Veth v. Gierth*, 92 Mo. 97.  "The acceptance,"
to conclude a contract, "must be unequivocal, uncon-
ditional, and without any variance of any sort between
it and the proposal."  *Strange v. Crowley, supra;* Fry
on Spec. Per., secs. 166, 167; Pomeroy, Spec. Per., sec.

63. In order to establish by parol a trust in lands, the evidence must be so cogent as to leave no room for reasonable doubt in the minds of the chancellor. *Adams v. Burns*, 96 Mo. 361 ; *Rogers v. Rogers*, 87 Mo. 257 ; *Modrell v. Riddle*, 82 Mo. 36 ; *Woodford v. Stephens*, 51 Mo. 433 ; *Forrester v. Scoville*, 51 Mo. 268; *Mo. Pac. Ry. Co. v. McCarty*, 97 Mo. 214.

The testimony in this case falls far short of establishing the contract set out in the petition clearly and satisfactorily by evidence so cogent as to leave no room for a reasonable doubt. That of the witnesses for the plaintiff, introduced for the purpose of substantiating the contract, is flatly contradicted by the evidence of the witnesses testifying for the defendant. So far as can be seen from the record, they are equally worthy of credit. It consists of their recollection of events that transpired nearly nine years before the time they testified—and the most that counsel for plaintiff claim ( in their able argument), or could claim, is that it is more probable that the version of plaintiff's witnesses is true than that of the defendant's. A conclusion, which is no more than a probability, based upon such evidence is a doubtful one at best and ought not be made the basis for a decree for specific performance of a parol contract with reference to lands. But, even if the evidence for the defendant be eliminated and the case be considered alone upon that of the plaintiff, *it* fails to satisfy the mind that any contract was ever entered into, such as *is* set up in the petition. A brief glance at one phase of the case as thus presented must suffice. According to the evidence of the Taylors, they concocted the scheme of this contract at home, knowing that some action was about to be taken under the deed of trust, and went to Mrs. Von Schraeder's that day for the express purpose of getting her to enter into the desired arrangement ; the ladies preceded Mr. Taylor by enough time to enable them to relate their troubles, excite Mrs. Von Schraeder's sympathies, and communicate in a

general way the plan by which they desired to have her assistance in relieving them (when Mr. Taylor appeared upon the scene), and the conversation took place, detailed in his evidence hereinbefore set out; now when that interview is fairly analyzed the result of the whole of it seems to be about this: That Mrs. Von Schraeder did not want the principal of the debt, but the interest was due, and she needed that. The land had been sold for taxes, and such an amount had accumulated that she did not want it to run on that way; that while, as far as her interest was concerned, she would be willing to do almost anything for her distressed friend, yet the debt was not hers, it belonged to the estate of her deceased husband; and when Mr. Taylor directly made to her the proposal to which they wished her to accede, while personally expressing a willingness to do so, in the same breath she referred him to "Mr. Parsons, her personal friend and agent and the trustee in the deed of trust." Divest Mr. Taylor's evidence of his deductions as to what she meant by her reference of his proposal to Mr. Parsons, and the fair deduction to be drawn from plaintiff's own evidence is that she was disposed to favor their wishes, so far as she could safely do so, but no final agreement was to be entered into until Parsons was consulted.

This deduction is confirmed by the fact, as will be observed in Mr. Taylor's evidence, that whenever thereafter he approached her on the subject he was invariably referred to Mr. Parsons, whatever conversation may have preceded. It is not pretended that any contract was ever entered into for her by Parsons by virtue of said reference, and we think, upon the plaintiff's own evidence, it cannot be found that Mrs. Von Schraeder did or ever intended, by what she said, to conclude any unconditional contract with the Taylors upon the subject.

III.    Even though such a contract as plaintiffs set up had been satisfactorily proven, there are several

insuperable obstacles in the way of its specific perform-
ance. *First.* The sole object and purpose of the
alleged contract was to withdraw whatever interest Mrs.
Mary L. Taylor had in the premises over and above the
amount of the deed of trust from her other creditors.
This would have been a fraud upon those creditors.
The fraudulent act was not consummated, but remained
in promise. The plaintiffs now ask specific performance
of that promise. A court of equity will not lend its
aid to the consummation of a fraud by so doing, but
will leave the parties to such a contract in the position
in which they have placed themselves. *Larimore v.
Tyler*, 88 Mo. 661 ; *Fenton v. Ham*, 35 Mo. 409 ; *Ham-
ilton v. Scull's Adm'r*, 25 Mo. 166.

*Second.* The alleged contract is void, being within
the statute of frauds. There was no delivery of posses-
sion under the contract, and no valuable and permanent
improvements made upon the faith thereof. Mrs. Von
Schraeder had not the possession and could not deliver
it. The only pretense of a delivery of possession is that
Mrs. Mary L. Taylor, upon their return home from the
interview with Mrs. Von Schraeder, told her household
that from that time on they would look to her daughter
for orders, and directed her son, William, to turn over
what he had there to her daughter's husband. The
possession of the land remained just it was before, the
Taylors living there just as they did before, and nothing
done thereafter by the plaintiff that is not just as reason-
ably referable to their former occupation of the premises
and the relation they sustained to their mother as to
any supposed contract. There was no actual or visible
change of possession. The case of *Simmons v. Headlee*,
94 Mo. 482, upon which plaintiffs rely upon this point,
was overruled by the case of *Emmel v. Hayes*, 102 Mo.
186.

The only improvement shown to have been made
is that Mr. Mortimer Taylor testifies that he caused
some of the fences to be repaired at a cost not exceeding

$200. Of course such repairs cannot be deemed permanent and valuable, so as to take a case out of the statute of frauds, nor can it be seen how they can be said to have been made upon the faith of a contract dependent upon the uncertain contingency of Mrs. Von Schraeder becoming the purchaser at the amount of her debt, if the property was worth the price the plaintiffs allege; for according to plaintiffs' version of the interview she stated positively she would not bid more than her debt for the property.

*Third.* The alleged contract was without consideration. Mrs. Von Schraeder was to receive nothing except her own, if it had been consummated, and she had no assurance of receiving that, except the unenforceable promise of a married woman. The contract remained as absolutely executory after as it was when the interview was had; although Mr. Taylor sold some personal property and discounted some notes, as he testifies on the faith of the alleged agreement, and to prepare to execute it, of the money he received, none of it was ever tendered or came to the hands of Mrs. Von Schraeder.

*Fourth.* The plaintiff, Mrs. May L. T. Taylor, is in no position to complain that the land did not bring at the sale as much as it was worth. She is seeking to uphold the sale and to enforce a contract that was dependent upon the land bringing no more than it was sold for. She had no interest in the land, and could not have acquired any, according to the alleged agreement, unless Mrs. Von Schraeder became the purchaser. If the land was sacrificed through any fraudulent acts of the parties to the alleged agreement, the owner is the one to complain, not the beneficiary of the fraud.

If the agreement charged was entered into, and in pursuance thereof representations were made by the parties thereto, by which bidders were deterred from bidding, or anything done to prevent the property bringing its full value, the creditors of Mrs. Mary L. Taylor are the sufferers from the wrong and the parties

Baker v. The Kansas City, St. J. & C. B. Ry. Co.

to complain. It is but fair to state, however, that the evidence discloses no representation made, or act done, by Mrs. Von Schraeder to prevent this property bringing its market value; whatever, if anything, was done tending to that effect was done by Mortimer F. Taylor.

After going carefully through the whole of the evidence in this case, we do not find that the plaintiffs have a single leg to stand on in a court of equity.

The judgment of the circuit court is affirmed. All concur, except BARCLAY, J., not sitting.