———o———

JULIUS WOODFORD, _et al._, Respondents, _vs._ ELIZABETH STEPHENS, _et al._, Appellants.

1. _Husband and Wife—Personal property of wife—Declaration of trust by husband._—All personal property of wife in possession, whether at the time of marriage or afterwards acquired, vests absolutely in the husband, unless conveyed to him or her for her sole and separate use, and he cannot be declared a trustee for his wife by any loose or general remarks made in conversations. To establish such a trust, the evidence must be clear and unequivocal.

2. _Trusts—Land—Frauds—Statute of._—When a person buys land with his own money, in order to make him a trustee thereof for any one, such trust under the statute of frauds must be manifested by writing and the evidence must be clear and unequivocal.

_Appeal from Johnson Circuit Court._

_Johnson & Botsford_, for Appellants.

The wife's _choses_ or personals in possession, whether owned

at the time of the marriage or acquired subsequently, pass immediately and absolutely to the husband. (Schoul. Dom. Rel., 112; Matter of Grant, 2 Story C. C. 312; Hyde vs. Stone, 9 Cow., 230; Glann vs. Younglove, 27 Barb., 480; Winslow vs. Crocker, 17 Maine, 29; Morgan vs. Thames Bank, 14 Conn., 99; Legg vs. Legg, 8 Mass., 99; Hawkins vs. Craig, 6 Monr., 257; Shirley vs. Shirley, 9 Paige, 363; Hopkins vs. Carey, 23 Miss., 54; Hopper vs. McWhorter, 18 Ala., 229; Hoskins vs. Miller, 2 Dev., 360; Skillman vs. Skillman, 2 Beasley, 403; Cropsey vs. McKenney, 30 Barb., 47; Gentry vs. McReynolds, 12 Mo., 533; Abbington vs. Travis, 15 Mo., 240; Boyce vs. Cayce, 17 Mo., 47; Polk's Admr. vs. Allen, 19 Mo., 467; Walker's Admr. vs. Walker, 25 Mo., 367; Clark vs. The National Bank, &c., 47 Mo., 17; Pawley vs. Vogel, 42 Mo., 291.)

If it is attempted to prove that the husband did not intend to acquire personal property, owned by the wife at the time of marriage or acquired by her descent, gift or otherwise during coverture, by the admissions and declarations of the husband, such admissions and declarations must be shown to have been deliberate, positive, precise, clear and consistent. (Walker's Admr. vs. Walker, 25 Mo., 367; In Re Gray's Estate, 1 Penn. St., 327; Gochenaur's Estate, 23 Penn. St., 460; Johnston vs. Johnston's Admr., 31 Penn. St., 450; Coates vs. Gerlach, 44 Penn. St., 43; Borst vs. Spelman, 4 Comst., 284; Jennings vs. Davis, 31 Conn., 134; Denning vs. Williams, 26 Conn., 226; George vs. Spencer, 2 Md. Ch., 353; Reynolds vs. Lansford, 16 Texas, 286; Gannard vs. Eslava, 20 Ala., 733; Walter vs. Hodge, 2 Swanston, 97; Schoul. Dom. Rel., 285; Cord. on Married Women, § 593; Clancey on Rights, 259, 260; 2 Sto. Eq. J., § 1375.)

While the case of Tennison, vs. Tennison, (46 Mo., 77,) was decided correctly upon the facts, some portions of the opinion delivered by Judge Currier certainly contain erroneous statements of the law. The closing paragraphs of that opinion assume, that, in order for the husband to acquire the ownership of *choses* in

possession of his wife, he must reduce them to his own possession with the express intent so to acquire them. This is not the law, as applicable to *choses in possession*, though it may be as to *choses in action*. (Schoul. Dom. Rel., 112 to 117).

When the rights of creditors are not in the way, courts of equity on less proof will compel the execution of the trust for the benefit of the wife. (Walker vs. Walker, 25 Mo., 367; 2 Sto. Eq., §§ 1372, 1373, 1380.)

ADAMS, Judge delivered the opinion of the Court.

This was an action in the nature of a bill in equity to divest out of defendants the title to the north half of the north-east quarter of section 19, township 45 of range 45, in Johnson county, and invest the same in Martha J. Woodford, wife of plaintiff, Julius Woodford.

The petition in substance alleges that the plaintiff, Martha J. Woodford, first married Humphrey J. Marshall, and that after she was married, she received a large amount of personal property from her father, among which was a fine horse, and all of which was held by her for her separate use, and that her late husband sold part of this property with the express agreement that the proceeds of sale were to be invested in lands for her separate use; that he took this money and entered the tract of land in dispute, and made the entry in his own name instead of hers, but that the land was entered for her and with her money, and was always held by him for her.

The defendants by their answer deny all the material allegations of the petition, and allege that the money belonged to Humphrey J. Marshall, her late husband in his own right, with which the land was entered. The defendants also set up as a bar to this suit a former judgment in partition between these same parties, in which part of the lands belonging to her former husband was allotted to the plaintiff as her dower, and the remainder, including the piece in controversy, was sold, and John Price, one of the defendants in this suit, became the purchaser.

The case was submitted to the court for trial, and the court found for the plaintiffs and gave judgment, vesting the title

to this tract of land in plaintiff, Martha J. Woodford, from which judgment the defendants have appealed to this court.

The evidence upon which this decree is based is preserved in the bill of exceptions, and the facts as developed are as follows:

In the year 1848, the plaintiff, Martha J. Woodford, whose maiden name was Martha J. Shivers, intermarried with Humphrey J. Marshall, in Johnson county, Mo. That at, or just before the marriage, her father had given her a horse and soon afterwards a cow and a heifer, and four or five sheep, and two beds and plenty of bedclothes. Some months after the marriage her husband, Marshall, went to her father's house and brought home the horse, cow, heifer and sheep. That in 1850 or 1851, Marshall sold the horse with another horse to John S. Jones for $130 for both; that the other horse so sold brought in the sale $75. The land in dispute was entered by Marshall in his own name in December, 1853. The witnesses on the part of plaintiffs testified in substance that they heard Marshall speak of this land in 1860 or 1861, and that he called it Martha's land, that he had entered it with money he got for the sale of Martha's horse that had been given to her by her father; that when persons wished to buy this piece of land he would say, it is Martha's land, go to her if you want it. Martha testified that she claimed the land as hers; that she claimed it as hers in the presence of her husband, Marshall. The evidence also showed that as long as Marshall had the horse he received from his wife's father he called it Martha's horse.

On the part of the defense it was in evidence by the testimony of John Price and his wife and sister-in-law, all of whom are parties to this suit, that the evening before the land was entered by Marshall, he came to Price's house in a great hurry to borrow the money to make the entry, saying that there was another man wanted the land, and it would ruin him if he did not get it. He wanted land office money, and Price let him have $100 in gold and silver to enter the land with; that on his return from the land office he said he had ridden all night and made the entry, and as he returned home met the man going to enter the land.

The patent for the land was dated in 1854, and conveyed the land to Marshall, the deceased husband of plaintiff's wife, Martha.

The defendants in this case are the brothers of Humphrey J. Marshall and his sisters and their husbands. Marshall died in 1861, intestate and without any lineal descendants.

The partition suit was brought by the defendants against the plaintiffs, and in that suit the plaintiffs by their answer admitted that Humphrey J. Marshall died seized of this land, and they did not set up in that suit that the plaintiff's wife was the equitable owner of this tract of land; that suit resulted in the allotment of dower to these plaintiffs in a part of the land, but did not include this tract; and this piece, with the remainder of the lands, was sold at partition sale, and the defendant, Price, bought this tract.

The foregoing constitutes all the facts developed by the evidence on both sides.

I am unable to perceive upon what principle the decree of the Circuit Court can be upheld.

It is too well settled to need illustration or citation of authorities that the husband, by marriage, acquires an absolute right to all the personal property in possession belonging to his wife, and that all subsequent acquisitions by his wife of *choses* in possession, vest absolutely in him unless such acquisitions be given or transferred to her or him for her sole and separate use. Where a husband, by means of the marriage, acquires the absolute right to personal property in possession, he can not be declared a trustee for his wife by loose and general remarks made in conversations. To establish such a trust against the husband, the authorities are united that the evidence must be clear and unequivocal. (Clancy 260; Walter vs. Hodge, 2 Swanst. 97. Walker adm'r, vs. Walker, 25 Mo., 367.) There is not a particle of evidence in this case to show that the small pittance of property received by Marshall, the former husband of plaintiff's wife, was received or held by him for her sole and separate use. His loose declarations in the presence of his wife or others to the effect that this land was

his wife's, and that the horse he sold was his wife's, and the land was bought with the proceeds of the sale of the horse, are not sufficient to establish a trust in her favor, either in the horse, land or proceeds of the sale of the horse. They are only such remarks as any kind husband must be allowed to make without creating a trust upon his property. (Slocum vs. Marshall, 2 Wash., C. C., 398, 1, John. Ch. 1.)

The declaration of the wife that this land was hers, is no sufficient evidence of a trust. If the money was his with which the land was entered, a trust, in favor of his wife or any one else could only be manifested or proved by writing. Conceding that it might be created by parol, it must under the statute of frauds be manifested by writing. To create a trust whether in regard to real or personal property, the act must be done with that intent, and must be manifested by clear and unequivocal evidence. The loose remark of Judge Currier in Tennison vs. Tennison, 46 Mo., 77, to the effect that the husband in receiving personal property coming to him by the marriage is presumed in equity to take it as the separate property of his wife, is unsupported by a single authority so far as I know. It was not necessary to the conclusion arrived at in that case, that he should have made this remark, and the other judges might have concurred in the result without assenting to this *dictum*.

A marriage without anything further, both at law and in equity, transfers to the husband absolutely all her *choses* in possession unimpressed by any trust in her favor, created or manifested by the mere act of reception.

Even if there had been sufficient evidence of a trust in favor of the wife in regard to the horse, etc., received by the husband, the weight of evidence clearly shows that the land was not purchased with the proceeds of the sale of the horse. The facts and circumstances all tend to prove that he borrowed the hundred dollars from Price, with which he entered the land, and afterwards paid Price the amount so borrowed.

There seems to be no possible light in which the facts of this case can be viewed so as to support the decree of the Cir-

cuit Court. As the decree is not supported by the facts, it is unnecessary to pass upon the effect of the judgment in partition.

The judgment is reversed, and the petition dismissed. The other Judges concur.