CURD v. BROWN, Appellant.

#### Division One, February 15, 1899.

1. **Trusts: EXPRESS: HOW PROVED.** Express trusts must be manifested and proved by some writing signed by the party to be charged.

2. ———: **IMPLIED: WHAT PROOF NECESSARY.** The evidence to establish an implied or resulting trust must be clear, strong, unequivocal and so definite and positive as to leave no room for doubt in the mind of the chancellor. There is no such proof in this case.

Curd v. Brown.

3. ——: ——: ——: ADMISSIONS. Admissions and verbal statements of deceased persons are entitled to small weight in establishing an implied or resulting trust.

4. ——: DEED TO WIFE: PRESUMPTION. Where a husband purchases land and has it deeded to his wife, the presumption, *prima facie*, is, that he intended it as a provision for her. Such presumption may be overcome by parol testimony.

5. ——: EVIDENCE: ONE PARTY DECEASED. In a suit by a husband against his deceased wife's heirs, to impress certain real estate with a trust, on the ground that it had been paid for almost entirely by his money, but deeded to his deceased wife, plaintiff was permitted to contradict statements and admissions attributed to him by living witnesses. *Held*, that he was not a competent witness in the case for any purpose.

6. Husband and Wife: IMPROVEMENTS: COMPENSATION. A husband can not claim any compensation for improvements put on his wife's land by him during coverture.

*Appeal from Grundy Circuit Court.*—HON. P. C. STEPP, Judge.

REVERSED AND REMANDED (*with directions*).

HALL & HALL for appellant.

(1) An express trust is one created by words evincing an intention to create a trust. 27 Am. and Eng. Ency. of Law, pp. 6 and 25; Underhill on Trusts and Trustees, 12 and 18; Perry on Trusts (4 Ed.), secs. 2, 13 and 24; Foster v. Friede, 37 Mo. 36; Beaver v. Beaver, 15 Am. St. Rep. 531; Estate of Smith, 27 Am. St. Rep. 644; Harney v. Dutcher, 15 Mo. 89; 2 Rapalje's Law Dict., 1296 and 1297. (2) An express trust must be proved by some writing signed by the party, or it will be void. R. S. 1889, secs. 5184 and 5186; Woodford v. Stephens, 51 Mo. 443; Ames v. Scudder, 11 Mo. App. 183; Price v. Kane, 112 Mo. 418; Wiess v. Heitkamp, 127 Mo. 23; Richardson v. Champion, 143 Mo. 538. (3) Where the husband purchases real estate with his own means and causes it to be conveyed to his wife, a *prima facie* case is made out that the husband

intended the conveyance to be a provision or a settlement for the wife and not a resulting trust, as would arise if no such relation existed. Schuster v. Schuster, 93 Mo. 438; Gilliland v. Gilliland, 96 Mo. 522; Kinzey v. Kinzey, 115 Mo. 496; Boynton v. Miller, 144 Mo. 681. (4) The plaintiff's wife with whom he claims the contract in suit was made, being dead, plaintiff was disqualified as a witness in his own behalf, even in rebuttal. R. S. 1889, sec. 8918; Teats v. Flanders, 118 Mo. 670; Messimer v. McCray, 113 Mo. 382; Leeper v. Taylor, 111 Mo. 322; Ring v. Jamison, 66 Mo. 424; Angell v. Hester, 64 Mo. 142; Wood v. Matthews, 73 Mo. 482; Reynolds v. Reynolds, 45 Mo. App. 622. (5) In order to establish a resulting trust, it must be proved by testimony so clear, strong and unequivocal as to banish every reasonable doubt from the mind of the chancellor respecting the existence of such trust. Reed v. Painter, 129 Mo. 674; Burdett v. May, 100 Mo. 13; Cornet v. Bertelsmann, 61 Mo. 127; Bradley v. Bradley, 119 Mo. 61.

O. P. HUBBELL and HARBER & KNIGHT for respondent.

(1) Where the purchase money of land is paid by one party and the legal title taken in the name of another, the parties being strangers, a resulting trust arises in favor of the party from whom the consideration proceeds. A similar rule prevails in cases where the consideration proceeds from two or more jointly, and the legal estate is taken in the name of one of them only. If, however, the husband purchases real property with his own means, and causes the same to be conveyed to his wife, a *prima facie* case is made out, that the husband intended the conveyance to be a provision or settlement for the wife and not a resulting trust, as would arise if no such relation existed. In either case, parol evidence is admissible to show the real intention of the parties. Perry on Trusts (4 Ed.), sec. 126; Baumgartner v. Frederick, 38 Mo. 36; Kelley v. Johnson, 28 Mo.

249; Shaw v. Shaw, 86 Mo. 594; Seibold v. Chrisman, 7 Mo.
App. 254; s. c., 75 Mo. 308; Price v. Kane, 112 Mo. 412;
Schuster v. Schuster, 93 Mo. 438; Gilliland v. Gilliland, 96
Mo. 522. (2) The evidence in this case was clear and con-
clusive. It showed, we think, without serious question, that
respondent had invested $2,850, and more, in the purchase
and improvement of the property in question. That it was
understood at all times between him and his wife, that in
case of sale of said property, if sufficient was realized to
repay the purchase money and improvements, the same
should be repaid. That in case of the death of respondent's
wife, she at all times being sickly, respondent should be repaid
the amount he had so invested in the purchase and improve-
ment of said property. But, aside from such understanding
or agreement, "the main point, the controlling question in
inquiries of this nature, is the ownership of the purchase
money. If such owership be established by parol in such
manner as to leave no room for a reasonable doubt in the
mind of the chancellor, the resulting trust springs into being
by implication of law, and follows the ownership of the
money." Shaw v. Shaw, 86 Mo. 594. (3) Appellant here
relies on a presumption of law. Presumptions of law are,
for the most part, arbitrary and harsh. Courts of equity,
in applying them, will ameliorate their harshness. Appell-
ant's claim is, in substance, based on the disputable presump-
tion that the parties intended the conveyance to be a provision
for the benefit of the wife. This presumption is not evi-
dence—its only legal effect is to place the burden of
proof on respondent. (4) While we insist, that under
the facts of this case, Mr. Curd was competent to tes-
tify in explanation and denial of the alleged conversations
with the Carsons and Mahan, the same having occurred long
after the death of his wife, yet, considering the long estab-
lished and oft repeated rule in this State, that "in proceed-
ings in equity, we (this court) do not pass on exceptions to

the admissions or rejections of evidence," we deem a discussion of this question unnecessary.  Padley v. Neal, 134 Mo. 372; Green v. Ditsch, 143 Mo. 1; Reynolds v. Croff, 144 Mo. 448.  We respectfully insist that, from the evidence in the record, the *prima facie* case, the presumption of law, that Mr. Curd intended working a lifetime for his wife's relatives, has been overcome and fully rebutted.

MARSHALL, J.—The petition is in the following language:

"Plaintiff says that on the 26th day of February, 1891, Susie E. Curd, his wife, departed this life, seized, subject to right of plaintiff hereinafter stated, of the following land in Grundy county, Missouri, to wit:  All of that part of block number four in James R. Merrill's Second Addition to the town of Trenton, in said county, described in the following metes and bounds to wit: commencing at the south west corner of said block, thence east one hundred feet, thence north one hundred feet, thence west one hundred feet, thence south one hundred feet to the place of beginning.

"The said premises were purchased by said Susie E. Curd and the plaintiff on the first day of October, 1877. That at the time thereof, said Susie E. Curd, paid of the purchase price the sum of one hundred dollars, and this plaintiff the sum of eight hundred and fifty dollars.  That at the time of said purchase said premises were unimproved, except a small house thereon of the value of two hundred and fifty dollars.  That it was agreed between plaintiff and his deceased wife at the time of said purchase and at other times during her life that plaintiff with his own money and means, should make certain improvements on said premises; that they should reside thereon as a home from the date of the purchase aforesaid until death of plaintiff's wife as aforesaid.  That the money so invested by plaintiff in the improvement of said premises, should in case of a sale thereof

be repaid to him, and then the amount so paid as the purchase price thereof by each, plaintiff and his wife, repaid to them if sufficient was realized from the sale thereof, if not they should each suffer such loss as the amount invested by them bore to the amount received from the sale thereof, and if a profit was realized from the sale thereof, after paying plaintiff for the sum so invested in the improvement as aforesaid the same should be apportioned and divided between them in accordance to the amount they had so paid in the purchase thereof. That in case said property was not sold they should own the same and have title thereto and rights therein, in accordance with the amounts so invested by each in the purchase thereof, and the improvement thereof. Plaintiff says that during the life of his wife and in pursuance of said agreement with her consent and direction, plaintiff in the erection of a house, stone and other fences thereon, and in erecting a barn and making other improvements thereon expended at various times during the life of his wife as aforesaid the sum of two thousand dollars. That said property is now of the value of about three thousand dollars. The plaintiff's said wife left surviving at her death, in addition to plaintiff aforesaid, her mother Elizabeth Mahan, and brothers Louis, John and Willie Mahan, and Mary Carson wife of John Carson, Amanda Jenkins wife of Samuel Jenkins, and Jennie Hamilton wife of C. C. Hamilton, and one niece, this defendant, the only child of Lucy Brown, wife of Jackson Brown.

"That plaintiff has purchased and now owns all the right, title and interest of each of said heirs above mentioned in said property, except the defendant who is a minor, and therefore unable to dispose of any interest she may have therein and hence the necessity of this suit to determine said interest and right of defendant and partition said property. And plaintiff avers the fact to be that the defendant is, as the niece of said Susie E. Curd, seized of one-eighth of said

property subject to the rights of plaintiff as aforesaid, and this property being as plaintiff avers not susceptible of division he prays that the appointment of commissioners be dispensed with, and that the said premises be sold and out of the proceeds thereof, plaintiff be first paid the sum so expended in the erection and improvement of said property as aforesaid, i. e. two thousand and eight hundred and fifty dollars, and that the remainder of the proceeds arising from the sale, if there be any, be divided among plaintiff and defendant according to their respective interests. That is, that plaintiff may have seven-eighths, and defendant one-eighth thereof, and that the court will make such other and further orders, decrees and judgments in the premises as may be just and equitable."

The answer is a general denial, a claim of one-eighth interest in fee, and an averment that plaintiff has no right or interest in the property.

Appellant's statement in this case is so refreshingly frank, full and fair, that the court takes pleasure in attesting its appreciation of the compliance with its rules and with the statute, by adopting it literally. It is as follows:

"This is a suit in partition, in which plaintiff seeks to charge the property with a trust, for moneys claimed to have been paid by him in purchasing and improving the same under an oral agreement with his deceased wife.

"In his petition he alleges that his wife died seized of the property. That the property was purchased by him and his wife, that his wife paid $100 of the purchase money, and he paid $850. That at the time of the purchase it was agreed between them that plaintiff should improve the property and that they should reside thereon as a home, and, in case it was sold, plaintiff should be repaid the money expended by him in the improvement of the property, and that if sufficient was realized from the sale, the amounts paid by them respectively should be refunded, and the profits or

loss should be shared by them in proportion to the amounts of the purchase money paid by them. That if said property was not sold, then plaintiff and his said wife should own the same in proportion to the amounts invested by them therein. That plaintiff expended the sum of two thousand dollars in the improvement of the property—asks that the property be sold, plaintiff be reimbursed for the money expended, and the remainder if anything be divided between plaintiff and defendant in proportion to their respective interests.

"Defendant by her guardian *ad litem* answered, denying generally the allegations of the petition, and claiming the one-eighth of the property in fee simple, as niece and heir of Susan E. Curd, wife of plaintiff.

"Susan E. Curd, was the former wife, of Dr. Wm. W. Smith, of Trenton, Mo. Smith died on the 27th of February, 1874. And she married the plaintiff on the 10th of October, 1876, and died on the 26th of February, 1891, without issue, leaving as her heirs, her mother, brothers and sisters, and defendant, an only child of Lucy Brown, deceased, who was a sister of said Susan E. Curd, being eight heirs in all. Plaintiff purchased all the heirs' interests in the property except the defendant's.

"On the trial, the plaintiff, against the objections and exceptions of the defendant, introduced in evidence the testimony of M. F. Curd, his brother, who had lived with plaintiff from a short time after his marriage until the trial. He testified that the property in question was purchased in 1877; that there was a small house on the lot at the time. After the purchase plaintiff erected a house, barn, fences and other improvements of the value of $2,000 or $2,500. The witness testified that he did not know who paid for the property. Said he knew from what he had heard Mrs. Curd say, that plaintiff paid for it, but that he did not know the amount. That plaintiff paid for the improvements, said he knew from

what Mrs. Curd said, that the plaintiff was to take out his improvements and all he had put in, and she was to do likewise. Said he did not think Mrs. Curd had much money at the time of her marriage to plaintiff. On cross-examination the witness said he did not recollect the conversation between plaintiff and his wife and Balser, the owner of the property, at the time of the purchase, said he did not think he heard all the conversation about the purchase. Said the property cost eight hundred and fifty or nine hundred dollars. Said he did not see the money paid, did not know where he was at the time it was paid. The witness was asked this question:

" 'Q. Was there any agreement between her and her husband in regard to this place?' And he answered, 'No, sir, if so I don't know of any. I don't think she put into it more than one hundred and fifty or two hundred dollars. I don't know the amount of money he put into the property. Don't know that I could say just the exact amount.' Said Mrs. Curd said she did not get anything from Dr. Smith's estate when it was settled up; that what she got or what they got, they were going to take care of.

"The defendant read in evidence, a trustee's deed from R. E. Boyce, trustee, to Susan E. Curd, dated October 1, 1877, for the property, from which it appears that Daniel Balser, the former owner, had conveyed the property to Boyce, in trust to secure an indebtedness to S. L. Harvey, that default was made in the payment of the debt, and the property was sold for the same, at which sale Susan E. Curd became the purchaser for fifty dollars, which was paid by her.

"Defendant also read in evidence a quitclaim deed from Daniel Balser to Susan E. Curd, dated October 10, 1877, by which it appears that said Balser, in consideration of the sum of two hundred dollars paid to him by Susan E. Curd, conveyed to her the property in controversy. Defendant read in evidence the settlements made by the administrator of

the estate of Dr. Wm. W. Smith, with the probate court, showing that in addition to the absolute property allowed her by law, he paid to said Susan E., before her marriage to plaintiff and the purchase of the property, $789.50 in cash.

"Defendant also read in evidence the deposition of John Carson, a farmer and a land surveyor, in which he testified that plaintiff and his wife, said Susan E., consulted and advised with him about the property and business, at which time they both told him that the property in dispute belonged to said Susan E., and had been paid for with her money that she had received from the estate of her first husband. That the business they were carrying on was mainly on her money, and that she had other means besides the house and lot. In addition to the deposition of John Carson, defendant read in evidence the depositions of Mary Carson, his wife, Nellie Carson and Nellie Mahan, in which they all, including John Carson, testified, that, in a conversation between plaintiff and the heirs of Susan E. Curd, in regard to their refusal to deed him the property, plaintiff flew into a rage, snapped his fingers and said he would show the Smiths, meaning Dr. Wm. W. Smith's heirs, how to come in and get the property, and they, Susan E.'s heirs, wouldn't get a cent.

"The plaintiff was then sworn, and against the objections, and exceptions of the defendant, testified that he had made no such statements as testified to in the depositions, and in addition thereto, and against defendant's objections and exceptions testified to other matters not testified to by said witnesses.

"The court found the issues for plaintiff, that he was entitled to $2,850 out of the proceeds of the property, ordered the property sold, and the $2,850 paid to the plaintiff and the balance, if any, divided between plaintiff and defendant, seven-eighths to plaintiff and one-eighth to the defendant. From which judgment defendant appealed."

## I.

It is not altogether clear from the petition whether the plaintiff claims under an express or an implied or resulting trust. If under an express trust, no case is stated or made out, for under section 5184 such trusts must be "manifested and proved by some writing signed by the party" to be charged, and there is no such writing in the case. [Woodford v. Stephens, 51 Mo. 443; Price v. Kane, 112 Mo. l. c. 419.]

If, however, it was the intention of the pleader, as it is, in this court, contended by him, to claim under an implied or resulting trust, then the rule, established by a long line of decisions of this court is, that the evidence of such trust must be clear, strong, unequivocal, and so definite and positive as to leave no room for doubt in the mind of the chancellor. [Woodford v. Stephens, 51 Mo. 443; Forrester v. Scoville, 51 Mo. 268; Modrell v. Riddle, 82 Mo. l. c. 36; Sweet v. Owens, 109 Mo. 1; Rogers v. Rogers, 87 Mo. 257; Railroad v. McCarty, 97 Mo. 214; Taylor v. Von Schraeder, 107 Mo. l. c. 226.] Where a husband purchases land and has it conveyed to his wife and there is no intimation in the deed that it was intended to be held in trust for him, the *prima facie* presumption is that he intended it as a provision for his wife. [Alexander v. Warrance, 17 Mo. 228; Gilliland v. Gilliland, 96 Mo. 522; Schuster v. Schuster, 93 Mo. 438; Kinzey v. Kinzey, 115 Mo. 496.]

This presumption may however be overcome, and parol evidence is admissible to overthrow it, but such evidence must be of the character above indicated. [Baumgartner v. Guessfeld, 38 Mo. 36; Shaw v. Shaw, 86 Mo. 594; Burdett v. May, 100 Mo. 13; Price v. Kane, 112 Mo. 412; Reed v. Painter, 129 Mo. 674.] Evidence of mere loose declarations of the person holding the legal title will not be sufficient, and testimony of verbal admissions or statements of

persons, since dead, is entitled to small weight in establishing such a trust. [Woodford v. Stephens, 51 Mo. 443; Ringo v. Richardson, 53 Mo. 385; Modrell v. Riddle, 82 Mo. 31.]

Measured by these standards this case is a puny dwarfling. The only competent evidence in the case touching the issue of a resulting trust in favor of the plaintiff is the testimony of his brother M. F. Curd, and when carefully examined his testimony entirely fails to sustain the issue and falls many degrees below the weight required to overthrow the *prima facie* presumption of the law. He was asked the direct question: "Ques. At the time of the purchase of these premises did you know who paid the purchase price? The money that was to pay it. Ans. No, I didn't." He was then asked: "Ques. Well, do you know from what Mrs. Curd said to you at any time or said in your presence? Ans. Ben, my brother, the plaintiff, paid the purchase price for the property. I don't know just the amount. He paid for the improvements." It will be noted that he first said he didn't know who paid the purchase price, and then when asked whether he knew from what Mrs. Curd said to him or in his presence, without answering the question, he contradicted his previous answer, by saying his brother paid it, but he did not know the amount. This testimony does not sustain the allegation of the petition that the plaintiff paid eight hundred and fifty dollars and wife one hundred dollars. But this is not all. The brother, when further interrogated said he did not see the money paid, and was not present when it was paid, and could not remember where he was, saying, "I might have been at home or at the saloon, or some place." But even this is not all. After saying that he had heard Mrs. Curd talk about it a hundred times, and adding that she had "but mighty little money," he was asked: "Ques. Was there any agreement between her and her husband in regard to this place?" And he answered: "No, sir. If so, I don't know of any." And then to clinch his

ignorance of the transaction and to accentuate his inconsistency he added: "I don't think she put into it more than one hundred and fifty or two hundred dollars. I don't know the amount of money she put into the property."

Upon this showing plaintiff rested his case in chief.

The defendant then introduced the deed from Boyce, trustee of Balser, to Susan E. Curd, showing that she purchased the property at the foreclosure sale for fifty dollars; and also a quitclaim deed from Balser to Susan E. Curd for a consideration of two hundred dollars. Thus proving that the property was purchased by Mrs. Curd for two hundred and fifty dollars, and clearly disproving the allegation of the petition that plaintiff paid eight hundred and fifty dollars and his wife one hundred dollars of the purchase price. Defendant accounted for the money Mrs. Curd used or may have used by showing that she received $798.50 from her first husband's estate, of which $200 was received in May, 1876. She was married October 10th, 1876, and the property was purchased October 1st, 1877. There was no evidence as to plaintiff's financial condition, and we are left to guess at it from the testimony of his brother that he paid from two thousand to twenty-five hundred dollars in making the improvements. Defendant further showed by the testimony of John A. Carson, that plaintiff and his wife visited him in Virginia, and they both told him the property belonged to Mrs. Curd and was paid for with money she had saved from her first husband's estate. Defendant further showed by the testimony of John C. Carson, Mary Carson, Nellie Carson and Nellie Mahan, that plaintiff visited Virginia shortly after his wife's death to get her heirs to quitclaim the property to him, and that when they refused he flew into passion and said they should not have the property for he would show the Smith heirs how to get it.

In rebuttal, over the objection and exception of the defendant, the plaintiff was permitted to testify and he not

only contradicted the testimony of the witnesses in Virginia as to his acts and declarations there, but also said he told Mrs. Carson that he paid the purchase price of the property and could prove it by his brother.

Giving the fullest effect to the testimony of plaintiff and his brother, it lamentably fails to establish the allegations or statements of the deceased person testified to twenty years after they are alleged to have been made, and hence came within the vigorous denunciation of BRACE, J., in Fanning v. Doan, 139 Mo. l. c. 411.   When taken in connection with the evidence adduced by the defendant there is not enough left of plaintiff's case to waste breath or time on.

## II.

The plaintiff was not a competent witness in this case for any purpose.   The circuit court permitted him to testify on the theory that he was competent to deny the statements attributed to him by the living witnesses in Virginia. In this respect the court committed error.   Section 8918, R. S. 1889, leaves him where he would have been at common law, incompetent for any purpose, because the other party to the contract was dead.   [Wood v. Matthews, 73 Mo. l. c. 482; Leeper v. Taylor, 111 Mo. 312; Teats v. Flanders, 118 Mo. 660; Ring v. Jamison, 66 Mo. 424; Angell v. Hester, 64 Mo. 142.]

## III.

The plaintiff having failed to establish either an express or a resulting trust, he is not entitled to the value of the improvements on the land, for a husband can claim no compensation for improvements put on his wife's land during the coverture.   [14 Am. and Eng. Ency. Law, 579, 625; Boynton v. Miller, 144 Mo. l. c. 687.]

## IV.

The judgment of the circuit court is reversed and the cause remanded with directions to that court to distribute the proceeds of the sale in partition, seven-eighths to the plaintiff and one-eighth to the defendant.   All concur.