MARY A. STEVENS et al., Appellants, v. HELEN K. STEVENS et al.

Division Two, June 5, 1925.

1. **VOLUNTARY DEED:** Construed as Mortgage: Given for Protection of Wife and Children. If the husband understood that his voluntary deed conveying real estate to his wife was executed to secure the payment of money she had advanced to pay his forged check, it was a mortgage, and if he re-paid her the legal title passed back to him; but if he had been dissipating and squandering his property, and conveyed the property to her in order that she and

their children might have a home and to protect them against its waste, it was not a mortgage. And the fact that, upon her death, he administered upon her estate, and did not inventory his alleged debt to her as an asset of her estate, but, with a full understanding of the transaction, did inventory the real estate as assets, was prima-facie a clear and unequivocal recognition of her title and a solemn disclaimer of title on his part; and the further fact that, after his subsequent marriage to plaintiff, he told her that the title was in his two children by his said first wife, that he had no power to direct a further disposition of the property, and that upon his death his life insurance in her favor and his bank stock and automobile would about equalize all interests, make it impossible to rule that the deed to the first wife was executed with the mutual understanding that it was to be a mortgage securing to her the payment of the disproportionately small amount of money she had advanced to pay his forged check.

2. ———: ———: **Inconsistent Pleading.** An averment that the wife promised, at the time her husband conveyed the lots to her, to hold the title for him so that she and he and the members of their family "would have a home and an income during her and his' life, and to prevent a further squandering and loss of said' property," is inconsistent with a contention that the deed was taken as a mortgage to secure to her re-payment of money she had advanced to pay his debt.

3. ———: **Resulting Trust: Fraud: Undue Influence: Provision for Wife.** A conveyance of real estate by a husband to his wife is presumed prima-facie to be intended as a provision or settlement upon her, and no trust will result; and where a mutual friend suggested to both, because of his dissipating habits, that the property be conveyed to her, and both readily acquiesced in the suggestion, and it was first conveyed to said friend and the next day by him conveyed to her, the husband's execution of the deed was not procured by her fraud or undue influence exercised upon him, nor does his intention rest upon presumption, but the provision for the wife is established by these facts, and no trust in his favor arose.

Corpus Juris-Cyc. References: **Estoppel,** 21 C. J., Section 153, p. 1149, n. 75 New. **Pleading,** 31 Cyc. p. 75, n. 52. **Trusts,** 39 Cyc. pp. 108, n. 41; 154, n. 20; 160, n. 62.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney,* Judge.

AFFIRMED.

*Joseph C. McAtee* and *Henry Higginbotham* for appellants.

(1) A deed or deeds absolute in form and terms, intended as security for the payment of a debt at the time of its execution, is a mortgage. Such intention may be shown by parol evidence, on the ground that the denial of the true character of the deed by the grantee is a fraud on his part. O'Neill v. Capelle, 62 Mo. 202; Cobb v. Day, 106 Mo. 295; Book v. Beasly, 138 Mo. 455; Reilly v. Cullen, 159 Mo. 322; Brightwell v. McAfee, 249 Mo. 562. (a) When a transaction had its inception in an application for a loan, the courts are inclined to scrutinize it closely and to hold it a mortgage, unless it clearly appears that the parties changed their minds afterwards. Cobb v. Day, 106 Mo. 278; Book v. Beasly, 138 Mo. 462. (b) Inadequacy of price, the grantors remaining in possession, and making improvements, are circumstances tending to prove the conveyance was intended to be a mortgage. Cobb v. Day, 106 Mo. 296. (c) The grantor is always presumed to have a prudential regard for his own welfare. When he conveys all of his property without valuable consideration, the only condition reconciling the presumption with the facts is the existence of a secret trust. Benne v. Schnecko, 100 Mo. 250; Chamberlain v. Chamberlain, 95 Pac. 660. (d) Once a mortgage, always a mortgage. The rights of the mortgagor are never extinguished until a regular foreclosure and sale, or by a release appearing by a writing importing in terms a transfer of the mortgagor's interest, or such facts as will estop him to assert any interest. Reilly v. Cullen, 159 Mo. 322; Lipscomb v. Talbott, 243 Mo. 32; 1 Jones on Mortgages (6 Ed.) sec. 340. (2) Where a party has been in the continuous, peaceable and uninterrupted possession for a period much longer than the period fixed by the Statute of Limitations, without ever having his title or pos-

session questioned until suit, he is not barred by the Statute of Limitations from obtaining equitable relief. Epperson v. Epperson, 161 Mo. 577; Hubbard v. Slavens, 218 Mo. 598; Bollinger v. Chouteau, 20 Mo. 89. (3) Where the transaction is between parties whose relations are of a close, fiduciary character, the parties seeking to have the deed declared to be a mortgage are not held to the same exactitude and strictness of proof, nor is the testimony offered in support of the bill to be viewed with the same scrutiny as in those cases where the parties deal with each other at arm's length. 1 Jones on Mortgages, p. 445; Linsay v. Linsay, 27 Pac. (Colo.), 877; Bohm v. Bohm, 10 Pac. 790. (4) By the provisions of our administration law, neither inventories nor appraisements are conclusive for or against an administrator nor are annual settlements. Williams v. Heirs of Petticrew, 62 Mo. 460, 470. (a) Property claimed adversely to the estate by third persons, or even the representative himself, should be included in the inventory. 23 C. J. 1160-1162, "Executors and Administrators," par. 378; Wilson v. Ruthrauff, 82 Mo. App. 435. (b) The indebtedness and deeds of trust being valid liens against the real estate, and the decedent, Emma Stevens, being a party to the notes, the holder of the notes had the right to have the mortgage debt allowed against the estate in the probate court, and for that purpose the mortgage creditors, as well as any other creditor who had given credit to Emma Stevens on the faith of her apparent ownership of the real estate, had a right to insist upon the land being inventoried as assets of the estate. Sec. 188, R. S. 1919. (5) If fraud in any form characterizes the obtaining of a title by wife or child, this of itself will rebut the presumption of an advancement. Darrier v. Darrier, 58 Mo. 227. (a) Presumptions of fact always take flight on the appearance of the facts themselves. Brown v. Brown, 237 Mo. 668; Stack v. General Baking Co., 283 Mo. 396; Shoemaker v. Johnson, 200 Mo. App. 216. (b) If the transactions between husband and wife amount to a mere gift to the wife, a

court of equity will require that clear and uncontrovertible evidence be brought forward to establish such gift as a matter of intention and fact, and will also require that such gift or allowance or settlement be no more than a reasonable provision for the wife. Lins v. Lenhardt, 127 Mo. 287.

M. F. O'Brien, Jos. M. Schindler and Robt. C. Powell for respondents.

(1) The law looks with favor upon a gift by the husband to the wife, and the presumption exists that the transfer was for the protection of the wife and children. Wilhite v. Wilhite, 284 Mo. 387; Bender v. Bender, 281 Mo. 473; Viers v. Viers, 175 Mo. 444; Curd v. Brown, 48 Mo. 82. (2) A presumption of this kind is, of course, rebuttable and might be overcome by parol testimony, but in order that that may be done, the evidence in rebuttal must be clear, strong, unequivocal and so definite and positive as to leave no room for doubt in the mind of the Chancellor. Nardell v. Riddle, 82 Mo. 31; Wunbush v. Danford, 238 S. W. 467. (3) An estoppel binding an ancestor is binding on his heirs and devisees, so that if the father and husband of plaintiffs, through whom they claim as remaindermen, was estopped to assert title to the property, they likewise are estopped whether or not they had knowledge of the matters which would state a cause of action. Hubbard v. Slavens, 218 Mo. 599; Herman on Estoppel (2 Ed.) sec. 787. (4) Conveyance by husband to his attorney and reconveyance by the attorney to wife of his grantor, with knowledge and consent of the husband, and deed having been recorded eighteen years, did not create a resulting trust in favor of the husband. McGehee v. Garringer, 224 S. W. 828.

HIGBEE, C.—This is an action to declare a deed, absolute on its face, a mortgage, and for partition. Plaintiffs appeal from a judgment in favor of the defendants.

Ronald F. Stevens, by the thrift and industry of him-
self and his wife, Emma Stevens, had acquired the two
properties involved in this action, one a business block,
subject to a deed of trust for $3,000, and the other the
property where they lived, subject to a deed of trust for
$1500.   On March 26, 1906, Stevens and his wife con-
veyed these properties by a warranty deed for the re-
cited consideration of five dollars, which was not paid,
to James W. Peeler, and on April 2, 1906, Peeler and his
wife conveyed them in fee to Emma Stevens for the re-
cited consideration of five dollars, which was not paid.
Stevens continued to live in the residence property until
the death of Emma Stevens, October 12, 1913, and until
his own death in 1923, during which time he collected the
rents of the other property, kept both in repair and paid
all general and special taxes.   He administered upon
the estate of his deceased wife and inventoried these
properties as belonging to her estate.   In the year 1916
he married the plaintiff Mary A. Stevens, and died in-
testate in 1923.   His daughter, Helen K. Stevens, and
the three minor children of his son Edwin M. Stevens,
deceased, are the defendants in this action.   He left sur-
viving him his widow, Mary A. Stevens, and one son,
Ronald F. Stevens, a minor, by his second marriage.
They are the plaintiffs.

The amended petition alleges that said deeds were
made for prudential reasons and not for the purpose of
divesting title out of said Ronald F. Stevens; that it was
understood that Emma Stevens was to hold the title in her
name in secret trust for said Ronald F. Stevens; that
she so received and treated said property during her
life; that Ronald F. Stevens continued in possession
thereof, collected the rents and income therefrom, paid
the taxes and upkeep out of his sole and separate funds
and exercised absolute dominion over the same; that at
the time of making said deeds said Ronald F. Stevens
had been dissipating for a period of several weeks and
was in a weakened condition and had been squandering
his property while in said condition and was importuned

and persuaded by said Emma Stevens to deed said property to her and that she then promised to hold said property for plaintiff's husband so that she and plaintiff's husband and the members of their family would have a home and an income during the life of said Emma Stevens and said Ronald F. Stevens, and to prevent further squandering and loss of said property, including the land herein described; that said Ronald F. Stevens had implicit confidence in said Emma Stevens and relied upon her promise and so relying did execute said deed, all of which said Emma Stevens well knew; that shortly prior to the time of said conveyances, said Ronald F. Stevens owed $300, which he was required to pay, and said Emma Stevens advanced said sum, which Ronald F. Stevens was obliged to re-pay to her and, as security for said sum, conveyed said land to her by and through said conveyances; that the securing said indebtedness was a part of the inducement and consideration for making said conveyances, which, although absolute in form and terms, were in fact and should be treated as an equitable mortgage; that part, if not all, of said indebtedness has been paid and plaintiffs ask the court to take an accounting, and they offer to pay any sum that may be found due and unpaid on said mortgage indebtedness and further in all things offer to do equity in the premises; that in equity and in good conscience the defendants should be held and declared trustees of these plaintiffs to the extent of all lawful claims in and to the same.

They further state that said property was the sole estate of said Ronald F. Stevens, excepting a small amount of personal property which has been consumed by the allowance of $1200 in lieu of provisions to plaintiff for a year's support and by the allowance of $400 as dower in said personal property; that plaintiffs are without adequate remedy at law and they pray judgment divesting title out of defendants and vesting the same in Ronald F. Stevens, a minor, and in defendants in accordance with their respective rights and that the same be

declared subject to the dower and homestead rights of
Mary A. Stevens, etc.   Then follows a count in partition
declaring that Mary A. Stevens is the widow of Ronald
F. Stevens, deceased; that she is entitled to dower and
homestead in said premises; that she is the duly appoint-
ed and qualified guardian and curator of Ronald F.
Stevens, a minor, etc.

The answer admits the conveyances as pleaded; the
death of Emma Stevens; the relationship of the parties
plaintiff and defendant, but denies all other allegations.
The answer pleads the ten-years' Statute of Limitations,
and that Ronald F. Stevens administered upon the es-
tate of Emma Stevens, deceased, and inventoried all
the real estate described in the petition as the property
of Emma Stevens at the time of her death, and that he
made affidavit and swore to the truth thereof and that
he failed to make any claim for the restitution of said
real estate in the probate court, and defendants are for-
ever barred from asserting any title or interest therein.

The reply is a general denial.

John Tate testified that shortly before the 1906
transfers were made, Mrs. Emma Stevens came to him
and said she had to have $300 for her husband; that he
had signed a name to a check without authority and was
in danger of prosecution and she was going to raise the
money for him and he was going to put the property in
her name to protect her.   Tate loaned her $200, which
she subsequently re-paid by paying $80 in money and he
took the remainder in rent at $40 per month.

James W. Peeler testified he knew Ronald F. and
Emma Stevens.   Stevens was in the bakery business, and
his wife assisted him; they lived in two rooms back of
the bakery.   Stevens then bought a lot and erected a
building containing two store rooms and two flats.   He
thought this property cost Stevens $7,000 or $8,000; the
other property about $4,000.   That in 1906 Stevens got to
dissipating and would stay away from his family for
weeks at a time.   Finally a policeman found Stevens badly
intoxicated and took him home.   Witness suggested to

Stevens that he make the deeds, and Stevens and his wife accordingly executed their deed to Peeler, and the next day Peeler and his wife executed their deed to Mrs. Stevens. The deeds were sent to Clayton to be recorded. Witness had previously suggested to Mrs. Stevens to have the title put in her name; that "Steve" had been dissipating and the way he was spending his money he would not have anything left for his wife and children, and witness asked him to make the deed for their sakes in order that they might have a home the balance of their days and to protect them as long as they lived. Mrs. Stevens thanked him and said that was all right. A few days afterwards the deeds were signed. Stevens had been dissipating for six months; he had contracted debts to the amount of $1500 during that time. These two properties were all he had.

Mrs. Mary A. Stevens, the second wife and mother of Ronald F. Stevens, Jr., testified they had been living in the residence property eight years and three months at the time of Stevens's death, April 19, 1923; that they were married June 27, 1916; that Helen Stevens lived with them; that Stevens asked her to sign some of his notes; that he stated in the presence of Helen, in an adjoining room from where he was seated, with the door open: "This is to your benefit; some day I am going to change this property back in my name so that you may get a benefit out of it." This was excluded by the court, to which ruling plaintiffs excepted. That when she objected to signing the note he said he was going to turn the property back in his name for her benefit; this was in 1920, when she signed one of the notes.

On cross-examination witness stated it was a year after their marriage when her husband told her the title was in Helen and Edwin's names, and that he intended to change it back to the way it was when he first started out because he had a son, the baby, that he wanted to look out for; and that he did not advise her before their marriage of the record condition of the title, but left her

under the impression that it was his property until he started a bus for his son Edwin in 1917.

Henry C. Kirchner, circuit clerk, formerly secretary of the St. Louis County Land Title Company, testified for the defendants: I have known Ronald F. Stevens since 1901; was his close friend and had several conversations with him in regard to this property. He telephoned me the day before he went to the hospital to come to his house. He asked me to explain to Mrs. Stevens the exact status his affairs were in so that in the event his trip to the hospital would be fatal she would be acquainted beforehand, and I explained to Mrs. Stevens and repeated it for Helen's benefit; and I told her the title since the death of the first Mrs. Stevens vested in Helen and Edwin and, after the death of his first wife, her husband had merely a curtesy interest and the enjoyment of the property for life, and in the event he died he had no power to direct its disposition. He asked me to try to advise the different members of his family, if it were possible and consistent to do that, to keep them from fighting about it; that he did not want any trouble; that he had taken an insurance policy in her favor in order to try to equalize matters. I believe the insurance was $3,000; that, with his automobile and bank stock, would about equalize all interests.

On cross-examination, witness valued the two properties, one at $7,500, the other at $18,000.; the rental value of the first would be about $60 per month.

Helen K. Stevens testified she was twenty-seven years old; that in April, 1918, her father said: "You know you are one-half owner of the property and Edwin owns the other half." Her father died April 18, 1923, and she continued to live there until in November, and paid her board. She knew of special improvements and special tax bills for sewering, curbing and guttering made after 1913.

Mrs. Mary A. Stevens, in rebuttal, testified that her husband did not tell her he did not own the house he

lived in, but that Edwin Stevens had made that statement and that his father was not present at the time.

I.  Plaintiffs' witness, James W. Peeler, testified that he told Mrs. Emma Stevens her husband was dissipating and the way he was spending his money he would have nothing left for her and their children, and that he suggested to Mrs. Stevens that the title be put in her name and asked Stevens to do so for their sakes, that they might have a home the balance of their days to protect them as long as they lived.  Mrs. Stevens told Tate that Stevens had forged a check and was in danger of prosecution; that she would raise the money and pay it, and that Stevens was going to put the property in her name to protect her. Peeler testified further that a few days after the conversation mentioned, the deeds were executed and mailed to Clayton, the county seat, to be recorded.  It is upon the statement to Tate that Stevens was going to put the property in her name to protect her that it is insisted by appellants that the deed to her should be construed as a mortgage to secure the repayment of the $300 paid by Mrs. Stevens on account of the forged check.

There is not a word of evidence in the record, when fairly construed, that at the time the deeds were made Stevens and his wife understood that he owed her the money so paid, or that they recognized it as a subsisting debt, or that they or either of them ever at any time considered or understood that the deed to Mrs. Stevens was given or taken as security for the re-payment of the $300 so paid by Mrs. Stevens.  The clear understanding, as it appears from Peeler's testimony, is that the deeds were executed to prevent Stevens squandering his property and to preserve it for the benefit of his wife and children.  It is apparent that this is what Mrs. Stevens meant when she told Tate that Stevens was going to put the title in her name to protect her.  The conversation with Tate was after Peeler had made the suggestion to Mrs. Stevens.

*Deed as Mortgage.*

It is vital to appellants' contention that Stevens understood that the deeds were executed to secure the payment of the $300 to Mrs. Stevens. If this was his understanding and the debt was unpaid at the time of Mrs. Stevens's death, then it was plainly his duty, as administrator of her estate, to have inventoried this secured debt as a part of the assets of her estate; if it had been paid, the security was discharged and there was no debt to inventory. But Stevens not only did not inventory the debt but, with a full understanding of the transaction, solemnly, under his official oath, inventoried these lots as the property of his intestate's estate. This was, prima-facie, a clear and unequivocal recognition of her title and a solemn disclaimer of title on his part.

Moreover, the plaintiff, Mrs. Mary A. Stevens, testified that, a year after their marriage, Stevens told her the title was in his two children Helen and Edwin. And the day before Stevens went to the hospital (where he died) he had his close friend, Mr. Kirchner, explain to Mrs. Stevens that the title was and had been in Helen and Edwin ever since the death of their mother and that he had no power to direct its disposition. At that time Stevens explained to Mrs. Stevens that his life insurance, bank stock and automobile would about equalize all interests. This evidence stands uncontradicted. There is not a shred of testimony in the record to support the contention that it was the mutual understanding that the deed was executed for the purpose of securing the payment of a debt.

II. The contention that the deed was taken as a mortgage is inconsistent with the averment in the amended petition that Mrs. Stevens "promised to hold the title to said property for plaintiff's husband so that she and plaintiff's husband and the members of their family would have a home and an income during the life of said Emma Stevens and said Ronald Stevens, and to prevent a further squandering and loss of said property."

*Inconsistent Pleading.*

III.   Neither is there any evidence tending to establish the contention that Mrs. Emma Stevens by fraud or undue influence procured the execution of the deed conveying the property to her in fee.   On the contrary, plaintiffs' witness Peeler testified that he suggested to Stevens and his wife that the property should be deeded to Mrs. Stevens, and it appears they both fell in with the suggestion and the deeds were made, transferring the title through Peeler as a conduit to Mrs. Stevens.   This constituted a clear gift or settlement and no trust resulted in favor of the grantor.   [McGehee v. Garringer, 224 S. W. (Mo.) 828, 831 (3).]   When, as here, the husband conveys or causes real property to be conveyed to his wife, prima-facie, it is presumed that he intended the conveyance as a provision or settlement for his wife, and a trust will not result.   [Bender v. Bender, 281 Mo. 473, 478; Wilhite v. Wilhite, 284 Mo. 387, 396; Gilliland v. Gilliland, 96 Mo. 525; Curd v. Brown, 148 Mo. 82, 92; 1 Perry on Trusts, sec. 143; 21 Cyc. 1255.]   That this was the grantor's purpose and intention need not rest upon a mere presumption; it is clearly established by all the evidence.   The judgment is affirmed.   *Railey, C.*, not sitting.

PER CURIAM:—The foregoing opinion of HIGBEE, C., is hereby adopted as the opinion of the court.   All concur.